Regena Kay Conrey Amie and Daniel A. Conrey were divorced in April 1998. The divorce judgment incorporated an agreement of the parties; that agreement contained a provision concerning postminority support for the parties' two children. That provision, paragraph 9 of the agreement, read as follows:
 "COLLEGE EXPENSES: The parties further agree to equally split all college expenses for both children that are over and above any scholarships, grants or financial assistance that they may receive. The guidelines for the parties splitting expenses are that both children shall seek out and take advantage of any and all scholarships, grants or financial assistance and they must be enrolled as a full time student and maintain a C average. Each child and REGENA KAY CONREY shall be responsible for providing evidence of full time enrollment each quarter and receipts of expenses to DANIEL CONREY. DANIEL CONREY shall have thirty (30) days from the date he receives such evidence and receipts to pay his one-half. Each party is allowed to pay [his/her] one-half of expenses directly to the college."
On October 15, 1999, the mother filed a petition to modify and a motion to show cause, alleging that the father had failed to comply with the April 1998 divorce judgment, which, among other things, required the father to pay one-half of the postminority educational expenses for the parties' son. The mother also requested an increase in child support for the parties' minor daughter and reimbursement from the father for his portion of the daughter's noncovered medical expenses. The parties stipulated to an increase in child support, because of the father's increased income; they also stipulated to the amount that the father owed in noncovered medical expenses. Those items are not at issue in this appeal. In her petition, the mother also requested that the trial court either hold the father in contempt or enter a judgment against him for his portion of the son's college expenses.
On November 8, 2000, the father answered and filed a counterpetition requesting that he be allowed to claim the parties' two children as dependents for income-tax purposes. The trial court declined to modify the dependency exemption, which was awarded to the mother in the April 1998 divorce judgment. That item is not at issue in this appeal. In his counterpetition, the father did not request that the trial court interpret, clarify, or modify the divorce judgment as it pertained to postminority support.
The pertinent facts in this case are as follows: During the parties' separation, the parties' son, who was a senior in high school, began considering various colleges. The record indicates that he had performed well academically while in high school; he had a grade-point average of 3.8 and an ACT test score of 34. The record indicates that he consulted both of his parents about his college opportunities. Based on his research, the son determined that the University of Colorado at Boulder had one of the best computer science curricula in the country and that it would be the best choice for him, based on the scholarships offered to him. The son testified that his father had agreed with him that the University of Colorado at Boulder *Page 844 
would be a good choice because the son wished to pursue a degree in computer science or business. The father disputed that testimony.
The scholarships awarded to the son by the University of Colorado at Boulder consisted of an "Air Force Stripes" award, which paid a portion of his room-and-board expenses his first semester, and an Air Force ROTC scholarship that paid $4,500 per semester.[1] The "Air Force Stripes" award had no physical-fitness requirements and was based on financial need. However, the Air Force ROTC scholarship had several physical requirements, with one being an upper-body-strength test, consisting of pull-ups and push-ups. The son testified that he lost his ROTC scholarship because he was unable to perform the required number of pull-ups and push-ups. He testified that he sought assistance from others enrolled in the ROTC program and from his instructors, to try to strengthen his upper body, but that he was unsuccessful. The evidence demonstrates that even though the "Air Force Stripes" award itself did not have certain physical-fitness requirements, in order to receive it the recipient had to be enrolled in the Air Force ROTC program.
The son notified his father in December 1998 that he had lost his Air Force ROTC scholarship. The father informed the son that he was unwilling to pay for the son's college education because he had lost his scholarships. After losing his scholarships, the son sought other scholarships. The son testified that he applied for several interdepartmental computer-science scholarships, but to no avail. He further testified that he sought scholarships on-line, with the assistance of the financial aid office at the university. He was also unsuccessful in that pursuit.
The son was awarded a Pell Grant in the spring of 1999; it paid approximately $775 per semester. He received the Pell Grant in the fall of 1999 and in the spring of 2000, as well. The son testified that, for an out-of-state resident at the University of Colorado at Boulder, tuition is approximately $7,875 per semester. He further testified that, on average, books cost approximately $500 per year. The son further testified that he had borrowed money for his education through "Stafford loans." His mother testified that she had also borrowed money to pay for the son's educational expenses through "Plus loans."[2]
The son also worked part-time during the fall of 1998 and the spring of 1999 in the university cafeteria, earning approximately $1,200 per semester for working 15 hours per week. In the fall of 1999, the son began working as a resident advisor in the campus dormitory. In that capacity, he worked 25 to 30 hours a week, and he received room and board and $40 every six weeks for his service. The record indicates that the son plans to continue to serve as a resident advisor for the final two years of his college education. Thus, his parents will incur no expense for their son's room-and-board expenses.
The son testified that it would cost approximately $10,000 per year for the next two years to complete his degree. He indicated that if each parent contributed $5,000 per year, he would be able to complete his bachelor's degree. He testified that he would take out student loans to make up the funds necessary to obtain his degree, if the parents' contributions were not sufficient. The mother testified that it *Page 845 
would cost more than $10,000 per year for the next two years for the son to complete his degree.
The record indicates that the mother earns approximately $34,800 working as a programmer for Electronic Data Systems. The father was earning approximately $50,000 per year at the time of the 1998 divorce. However, the record indicates that at the time of the June 14, 2000, hearing the father's earnings exceeded $70,000 per year.
After conducting ore tenus proceedings on May 9, 2000, the trial court entered a judgment finding, among other things, that the father owed the mother one-half of the son's postminority educational expenses that had accrued during the son's first two years of college. The trial court ordered the father to pay the mother $22,338.70, one-half of the money the mother had already spent for the son's college expenses.
At the conclusion of the May 9 proceedings, the father's attorney, at the suggestion of the trial court, made an oral motion, requesting that the trial court interpret or clarify paragraph 9 of the divorce judgment, pertaining to postminority support for the parties' children. The mother's attorney objected. The trial court gave the father 10 days to file a written motion to amend his answer and to counterclaim for a declaratory judgment. On May 17, 2000, the father filed a motion to continue, a motion to amend, and an amended counterpetition for a declaratory judgment as to paragraph 9, the postminority-support provision contained in the parties' divorce judgment. The mother filed an answer, an objection to the father's amended counterpetition, and a motion to strike. The trial court continued the case until June 14, 2000, to address the clarification of paragraph 9 of the parties' divorce judgment.
Following ore tenus proceedings on June 14, 2000, the trial court, on June 20, 2000, purported to clarify paragraph 9 of the parties' divorce judgment, ordering as follows:
 "5. That paragraph nine (9) of the Settlement Agreement between the parties is ambiguous and overly broad and therefore an actual controversy exists between the Former Wife and the Former Husband on which substantial property rights depend.
 "That the parties require clarification and declaratory judgment to determine the parties' rights, duties and obligations to financially provide for college education under this paragraph.
 "That paragraph nine (9) shall be clarified as follows:
 "The parties shall be responsible for one-half of the child's college tuition, books and fees up to $2,500.00 per semester, or $5,000 per year, per parent. Any amount incurred over and above the $2,500.00 per semester, or $5,000 per year, paid by each parent shall be the responsibility of the child attending college. Each party is allowed to pay [his/her] portion of expenses directly to the college. Each semester the child shall forward to the Former Husband by certified mail, a copy of the child's transcript outlining the courses, hours and grades for the previous semester and receipts of all expenses. This obligation shall continue until the child receives his or her college degree, but in no event longer than four years from the date the child commenced his college education. The child must maintain a curriculum consistent with obtaining a college degree and maintain a `C' average."
The mother filed a postjudgment motion; the trial court denied that motion. The mother appeals.
The mother contends that the trial court erred in interpreting or clarifying paragraph *Page 846 
9 because she says there was no uncertainty in the meaning of the terms of paragraph 9 concerning postminority support.
This court recognizes that when the trial court's judgment is based on ore tenus evidence, that judgment is presumed correct and is not subject to reversal unless it is so unsupported by the evidence that it is plainly and palpably wrong. Berry v. Berry, 579 So.2d 654 (Ala.Civ.App. 1991). However, there is no presumption of correctness in the trial court's application of the law to the facts. Gaston v. Ames, 514 So.2d 877
(Ala. 1987).
This case involves an agreement, executed by the parties, that was incorporated into the parties' divorce judgment, in which the father had agreed to pay the requested postminority support. Judgments of divorce are to be interpreted or construed as other written instruments are. Deesv. Dees, 581 So.2d 1103 (Ala.Civ.App. 1990). The words of the agreement are to be given their ordinary meaning, and the intentions of the parties are to be derived from them. Vainrib v. Downey, 565 So.2d 647
(Ala.Civ.App. 1990). Further, if the terms of the judgment are not ambiguous, they should be given their usual and ordinary meaning. McClurev. Cassady, 426 So.2d 430 (Ala.Civ.App. 1982). We note that this court has held that:
 "Agreements reached in divorce actions are as binding on the parties as any other contract. Porter [v. Porter, 441 So.2d 921 (Ala.Civ.App. 1983)]. A trial court has the discretionary authority to permit a party to repudiate its agreement for good cause shown. Porter. Good cause includes `fraud, collusion, accident, surprise or some other ground of this nature.' Borders v. Borders, 597 So.2d 1373
(Ala.Civ.App. 1992)."
Jackson v. Nelson, 686 So.2d 338, 339 (Ala.Civ.App. 1996) (quoting Culverv. Culver, 651 So.2d 21, 23 (Ala.Civ.App. 1994)).
We conclude that the trial court's purported construction of paragraph 9 is not in accordance with the plain language of the divorce judgment and contradicts its order awarding the mother $22,370, one-half of the educational expenses already paid by the mother. The language of paragraph 9 of the divorce judgment is plain and unambiguous on its face and, therefore, the words of the paragraph should be given their common and ordinary meaning. McClure, supra.
Paragraph 9 clearly requires the parties to "equally split all college expenses that are over and above any scholarships, grants or financial assistance that [the child] might receive." The remainder of paragraph 9 imposes conditions on the payment of postminority support, requiring both children to maintain a "C" average and to use their best efforts to obtain available financial assistance. No limitation is imposed on the choice of college; therefore, paragraph 9 clearly requires each parent to pay one-half of all college expenses that are not covered by grants or financial assistance. The trial court apparently encountered no difficulty in discerning the meaning of paragraph 9; in its order directing the father to pay the mother one-half of the educational expenses she had already incurred, the trial court stated:
 "Mr. Conrey, you're going to have to pay half of what's been spent thus far. I can't, under the law, do anything different than that. The wording of that paragraph doesn't limit — You've read it several times. You all know what its says. I can't play with words. I have to give strict [construction] to the way that it is written. And in particular in this case because it is the agreement of the *Page 847 
parties. It's not something I wrote. It's not a decree that I created. It's your agreement by and between each other. Both represented by counsel at the time you signed it. So I've got to read it as it's plainly written. And as it's plainly written under the circumstances and evidence, as I understand it, up until this day, today, you're responsible for one half of the education expenses associated for the education of that child no matter what they are, no matter where it is. And he's supposed to apply for these things and he's supposed to get them if he can. But if he can't, he can't."
(Emphasis added).
We conclude that the language of paragraph 9 is clear and unambiguous. The trial court erred in attempting to clarify the parties' agreement, incorporated by reference into the divorce judgment, when the language is clear and unambiguous. Therefore, that portion of the trial court's judgment purporting to clarify the parties agreement is reversed.
The mother further argues that the trial court abused its discretion in failing to award her an attorney fee. An attorney fee is ordinarily available in a modification proceeding because it is merely an extension of the original divorce action, and such a fee may be awarded without a finding of contempt. Ayers v. Ayers, 643 So.2d 1375 (Ala.Civ.App. 1994), cert. denied, 643 So.2d 1377 (Ala. 1994). In addition, it is well settled that the award of attorney fees in divorce or modification cases is within the sound discretion of the trial court and that such awards will not be reversed absent an abuse of discretion. Cole v. Cole, 507 So.2d 1333
(Ala.Civ.App. 1987). Factors to be considered by the trial court in a modification case in making an award of attorney fees include the earning capacity of the parties, the results of the litigation, and the financial circumstances of the parties. Bertram v. Doss, 709 So.2d 1274
(Ala.Civ.App. 1998). Because of the disparity in the parties' earning capacities, the unambiguous nature of the agreement, and the financial circumstances of the parties, we conclude that the trial court abused its discretion in failing to award the mother an attorney fee. We reverse the trial court's order denying the fee. On remand, the court should award an appropriate fee.
The judgment of the trial court is reversed, and the case is remanded for the trial court to enter a judgment consistent with this opinion.
The father's request for an attorney fee on appeal is denied. The mother's request for an attorney fee on appeal is granted in the amount of $3,800.
REVERSED AND REMANDED.
Yates, P.J., and Crawley and Pittman, JJ., concur.
Murdock, J., concurs specially.
[1] The record is unclear as to the exact amount the "Air Force Stripes" award paid.
[2] The record indicates that "Plus loans" are loans taken out by the parents to cover their children's educational expenses.