[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 789 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 790 
Brenda M. Amaro ("the mother") and Vincent J. Amaro ("the father") were divorced by a November 25, 1987, judgment of the trial court ("the divorce judgment"). The divorce judgment, among other things, awarded the mother custody of the parties' two minor children (hereinafter collectively referred to as "the children"); awarded the father reasonable visitation; ordered the father to pay child support of $650 per month; ordered the father to provide medical insurance for the benefit of the minor children; and ordered the parties to divide equally the children's medical expenses that were not covered by medical insurance. On August 25, 1993, October 28, 1993, and April 9, 1997, the trial court modified the divorce judgment; however, those modifications are not relevant to the issues raised in this appeal.
On May 26, 1999, the mother petitioned the trial court for a modification of child support, seeking postminority support for the parties' oldest child who had reached the age of majority and seeking an award of child support for the minor child consistent with Rule 32, Ala. R. Jud. Admin. The mother also filed a motion for a rule nisi, asserting that the father had failed to pay child support and medical expenses pursuant to the terms of the divorce judgment. The father filed a motion to dismiss and a motion for a summary judgment; the trial court denied both of those motions.
On December 14, 2001, the trial court entered an order in which it found the father in contempt for failing to pay child support pursuant to the terms of the divorce judgment; ordered the father to pay a child-support arrearage of $8,142.18; ordered the father to pay $499 per month in child support for the parties' minor child; ordered the father to pay $200 per month in postminority support for the parties' oldest child; ordered the father to pay the first $200 of "any extraordinary medical, dental, or other health related expenses incurred on behalf of the children" that were not covered by insurance; ordered the parties to share equally the medical, dental, and health-related expenses in excess of $200 not covered by insurance; and ordered the father to pay the mother an attorney fee of $2,500. On January 24, 2002, the father appealed. On that same date, the father filed a motion to stay the trial court's judgment pending the outcome of this appeal; the trial court denied that motion on January 30, 2002.
Where a trial court receives ore tenus evidence, its judgment based on that evidence is entitled to a presumption of correctness on appeal and will not be reversed absent a showing that the trial court abused its discretion or that the judgment is so unsupported by the evidence as to be plainly and palpably wrong. Scholl v. Parsons, 655 So.2d 1060
(Ala.Civ.App. 1995). This "presumption of correctness is based in part on the trial court's unique ability to observe the parties and *Page 791 
the witnesses and to evaluate their credibility and demeanor." Littletonv. Littleton, 741 So.2d 1083, 1085 (Ala.Civ.App. 1999). In addition, when the trial court's judgment does not make specific findings of fact, this court must assume that the trial court made those findings of fact necessary to support its judgment. Ex parte Bryowsky, 676 So.2d 1322
(Ala. 1996). This court is not permitted to reweigh the evidence on appeal and substitute its judgment for that of the trial court. Somers v.McCoy, 777 So.2d 141 (Ala.Civ.App. 2000).
The mother testified that she was employed by the Mobile County public school system, earning $39,000 per year. The mother stated that she had worked part-time during three months of 2000 at both a Harco Drugs store and a Wal-Mart discount store. According to the mother, she earned approximately $1,000 for the three months she worked at Harco Drugs, but she could not recall what she had earned when she worked at Wal-Mart. The mother testified that she had not performed any part-time work during 2001. The father is self-employed. The father testified that he owned and operated Rhino Industries, a demolition contracting company.
Both parties had remarried at the time of the hearing in this matter. The father testified that he paid $300 per month for health insurance for himself and his current family. The father testified that the parties' son was covered under that policy. The father stated that he maintained a separate policy for their daughter at a cost of $35 per month.
The mother testified that the father had not paid his portion of the children's medical bills that were not covered by insurance. The mother testified that she had paid all of the bills and that she had mailed the receipts and bills to the father for reimbursement. The mother stated that the father had reimbursed her for some of the children's medical expenses for the period 1996 to 2001. The record contains a summary prepared by the mother of the bills that the father had not paid. That summary shows that from 1996 to 2001, the father owed a total of $1,288.30 in unreimbursed medical expenses.
The father testified that he had paid some of the children's medical bills between 1996 and 2001. The father submitted a letter written by him and addressed to the mother stating that he had enclosed a check in the amount of $22.44 for medical reimbursements in the amount of $222.44 submitted by the mother. The letter indicates that the father asserted that the daughter had received a tax refund, that he estimated that the amount of that refund was approximately $200, that he should be given the refund; thus, he says, he was offsetting the amount of medical reimbursements by $200 until he received the refund or a copy of the daughter's tax return demonstrating that the refund was for a different amount. The father also submitted a list of medical expenses in the amount of $573.15 that he asserts he paid directly to the children's health-care providers during 1998 and 1999; however, most of that amount does not appear on the mother's list of unreimbursed medical expenses.[1]
The father's list includes check numbers for some of the amounts he asserts he paid by check; however, the father testified that he did not submit any *Page 792 
checks to document the amounts shown on his summary.
The mother testified that the father reduced his monthly child-support payment to $325 when the daughter turned 19 in October 1999. According to the mother, the father did not notify her of the reason for reducing his child-support payments. The mother testified that the father had not paid any child support since June 2001; the mother testified that the father's total child-support arrearage at the time of the hearing in this matter was $11,766.18. The mother testified that the trial court had issued a previous order on August 25, 1993, finding the father in contempt for failing to pay child support.
The father admitted that he reduced his child-support payments from $650 per month to $325 per month when the daughter, the parties' oldest child, turned 19. According to the father, he thought that he was no longer obligated to pay child support for the daughter when she reached the age of majority. When asked whether the trial court had reduced his child-support obligation to $325 per month, the father stated "it hasn't been lowered yet." The father testified that he was financially unable to pay child support after June 2001, and that, thus, he had failed to make any payments since that time. The father testified that he thought his child-support obligation should be modified; however, the father admitted that he had not filed a motion requesting that the trial court reduce his child-support obligation.
The father testified that he and his current wife filed separate tax returns. According to the father, his federal income tax return for the year 2000 showed that he had earned $22,135 in gross income; the father estimated that he would earn the same amount in 2001. The father testified that he had received gross receipts from Rhino Industries of $60,425 in 2000. The father stated that in addition to owning and operating Rhino Industries, he owned five parcels of property; those properties had billboards located on them and he leased the billboards to advertisers. The father testified that in 2000 he had received $25,659 in rental income from the billboards. The father stated that he also owned a parcel of commercial property and a parcel of residential property on which a house was located. The father testified that he owned two vehicles, a backhoe, stock in Books-A-Million, Inc.; Norfolk Southern Railway Company, Inc.; and Hilton Hotels Corporation, and that he had savings and certificates of deposit totaling $20,000 to $25,000 and an individual retirement account. The father's tax return shows that he earned $1,386 in interest income in 2000.
The father testified that he owned his own home and that he had paid off the mortgage on that home in 1999. According to the father, he took out a second mortgage on his house in 1999. The father stated that he estimated that the amount of the second mortgage was $200,000 and that his monthly mortgage payment was $1,600. When questioned as to whether he could sell his stock or cash in his certificates of deposit to pay his child support, the father stated that the value of his stock was down, that he would incur a loss if he sold the stock, and that he would incur a penalty if he cashed his certificates of deposit before they matured. The father testified that he could cash in his individual retirement account "in the case of an emergency."
The father testified that since 1999 he had also owned an advertising and consulting business and operated a booth in an antique mall; however, the father could not recall his earnings from those businesses. The father testified that he took the daughter on a trip to Washington, D.C. *Page 793 
in October 2001. According to the father, he purchased the airplane tickets, and paid for the hotel room and all of the expenses of the trip. However, the father testified that he was financially unable to pay his October 2001 child-support obligation.
At the time of the hearing in this matter, the daughter was 21 years old and the son was 17 years old; the daughter turned 19 in October 1999. The mother testified that the daughter attended Jacksonville State University. The mother stated that the daughter had a full-tuition scholarship and that she had maintained an A to a B+ average in her studies. The father testified that he provided the daughter with health insurance and car insurance; and that he had assisted the daughter financially since she began college. The father testified that he sent the daughter $600 in the summer of 1999 and that he was not sure, but he thought he sent his daughter $100 to $150 per month during the summer of 2001. According to the mother, she had provided the daughter approximately $1,200 in order to assist her in paying for her room, board, books, and fees. The mother testified that the daughter provided for the remainder of her expenses by taking out a student loan in the amount of $9,000.
The father asserts that the trial court erred in failing to order child support in compliance with Rule 32, Ala. R. Jud. Admin. The father also asserts that the trial court erred in calculating his monthly gross income, in increasing his child-support obligation, and in increasing his obligation for the son's medical expenses.
 "Modification of child support is a matter that rests within the sound discretion of the trial court; the court's judgment on that matter will not be reversed absent an abuse of discretion or unless the judgment is plainly or palpably wrong. Child support may be modified on a showing of materially changed circumstances. Because child support is for the benefit of the minor child, the best interest of the child is the controlling consideration in an action for the modification of child support."
Arnett v. Arnett, 812 So.2d 1246, 1249 (Ala.Civ.App. 2001) (citations omitted). See also Beavers v. Beavers, 717 So.2d 373 (Ala.Civ.App. 1997).
If the combination of the parties' incomes is within the amounts specified in the child-support schedule of Rule 32(A) and (C), Ala. R. Jud. Admin., there is a rebuttable presumption that the amount of child support determined by application of the Child Support Guidelines is the correct amount of child support to be awarded. Rule 32(A), Ala. R. Jud. Admin.
 "[T]his court has consistently held that the application of Rule 32 is mandatory in child-support actions filed on or after October 9, 1989. A trial court may deviate from the child-support guidelines in determining a child-support amount; however, any deviation is improper if it is not justified in writing. In Martin v. Martin, 637 So.2d 901, 902
(Ala.Civ.App. 1994), this court issued the following directive:
 "`We hold, therefore, that the word "shall" in Rule 32(E), Ala. R. Jud. Admin., mandates the filing of a standardized Child Support Guidelines Form and a Child Support Obligation Income Statement/Affidavit Form.'
 "Compliance with Rule 32(E) is mandatory, even though the trial court may find that the application of the guidelines would be unjust or inequitable. When the court determines that application of the guidelines would be manifestly unjust or inequitable, and then deviates from the guidelines in setting a support obligation, the court must make *Page 794 
the findings required by Rule 32(A)(ii), Ala. R. Jud. Admin. When Rule 32(E) has not been complied with and child support is made an issue on appeal, this court may reverse the judgment of the trial court and remand the case for further proceedings in compliance with Rule 32."
Thomas v. Norman, 766 So.2d 857, 859 (Ala.Civ.App. 2000) (citations omitted) (emphasis added).
Pursuant to the terms of the trial court's December 14, 2001, judgment, the father was ordered to pay $499 per month in child support for the parties' remaining minor child. The trial court stated that its award of child support was calculated in compliance with Rule 32, Ala. R. Jud. Admin. In the original record as certified to this court on appeal, there were only two Child Support Guidelines Forms, one prepared by the mother and one prepared by the father, neither of those forms recommended a child-support obligation of $499 per month. The transcript, however, indicated that the court based its award of child support on a CS-42 form other than the two filed by the parties; that CS-42 form was not in the record before this court. Therefore, pursuant to Rule 10(f), Ala.R.App.P., this court, on its own initiative, ordered that the omission be corrected by supplementing the record with the CS-42 form relied on by the trial court. The clerk of the Mobile Circuit Court transmitted the missing CS-42 form to this court, and it is now a part of the record on appeal.
The trial court's CS-42 form shows a child-support obligation of $499 per month. The trial court's CS-42 form states that the mother's monthly gross income was $3,250 and that the father's monthly gross income was $4,798. The trial court's CS-42 form states that, based on the testimony presented at the November 26, 2001, hearing, the father's income as shown on his CS-42 form was understated. Although the father testified that his gross income in 2000 was $22,135, the record contained evidence indicating that the father derived income from many sources and that $22,135 did not adequately represent the father's annual gross income. Therefore, this court concludes that the trial court did not err in imputing income to the father or in ordering the father to pay a child-support obligation of $499 per month. See Arnett v. Arnett, supra.
The father next asserts that the trial court erred in calculating his child-support arrearage and that the trial court's calculation is contrary to the evidence. First, the father asserts that he owed no arrearage because, he says, the divorce judgment permitted him unilaterally to reduce his child support obligation when the daughter reached age 19. Second, the father asserts that he is unable to determine the manner in which the trial court reached its arrearage award. A trial court's award of child support may not be unilaterally reduced absent language in the divorce judgment permitting the reduction or consent from the court to the reduction. Phillippi v. State ex rel. Burke,589 So.2d 1303 (Ala.Civ.App. 1991). "The determination of a child-support arrearage and the allowance of credits toward an arrearage are within the discretion of the trial court. Absent a showing of an abuse of discretion, the trial court's judgment will not be reversed." Abel v.Abel, [Ms. 2000250, July 27, 2001] 824 So.2d 767, 768 (Ala.Civ.App. 2001) (citations omitted). "The award or denial of a credit against an arrearage is within the sound discretion of the trial court and will not be reversed absent a showing of plain and palpable abuse." Phillippi v.State ex rel. Burke, 589 So.2d 1303, 1304 (Ala.Civ.App. 1991). *Page 795 
Our review of the divorce judgment reveals no language providing for the unilateral reduction by the father of his child-support obligation upon the daughter's reaching the age of majority. Further, at the November 26, 2001, hearing, the father stated that he felt his child-support obligation should be reduced; however, the father never filed a motion with the trial court requesting such relief. The mother asserted that the father owed a child-support arrearage of $11,766.18. The trial court ordered the father to pay an arrearage of $8,142.18. The father testified that he had provided the daughter $600 in the summer of 1999 and, although he stated he was unsure as to the exact amount, the father stated that he thought he had sent the daughter $100 to $150 per month during the summer of 2001. It appears from the record that if the trial court erred in its calculation, it did so to the father's benefit. The mother did not appeal the trial court's arrearage award. Thus, this court cannot say that the trial court abused its discretion in ordering the father to pay a child-support arrearage in the amount of $8,142.18. SeeAbel v. Abel, supra.
The father also asserts that the trial court erred in holding him in contempt for failing to pay child support. The father does not dispute that he failed to make the court-ordered child-support payments. Rather, the father asserts that he assumed that he could reduce his child-support payments when the daughter reached the age of majority, and that, after June 2001, he was financially unable to make those payments. In its December 14, 2001, order, the trial court found the father in contempt for his failure to pay child support; however, the trial court found that the father could purge himself of that contempt by complying with the trial court's future orders.
The determination of whether a party is in contempt for failing to pay his support obligation is a matter within the sound discretion of the trial court. Stack v. Stack, 646 So.2d 51 (Ala.Civ.App. 1994). The trial court's finding of contempt based on ore tenus evidence will not be reversed absent a determination that that finding is plainly or palpably wrong. Id. A party's inability to pay a child-support or an alimony obligation is a defense to contempt. Cook v. Cook, 578 So.2d 1354
(Ala.Civ.App. 1991). The court will not condone a parent's unilateral decision to reduce his or her child-support obligation absent language in the divorce judgment permitting such a reduction or consent from the court to such a reduction. Phillippi v. State ex rel. Burke, supra.
As stated above, this court's review of the divorce judgment reveals no language granting the father the ability to unilaterally reduce his child-support obligation upon the oldest child's reaching the age of majority. Further, the father testified that he had not paid child support since June 2001. In addition, the father testified that he owned his own home; that he had $20,000 to $25,000 in savings; that he had stock investments; that he owned two vehicles; and that he owned several parcels of property. When a trial court awards child support, that award is solely for the benefit of the parties' children. This court does not look lightly on a parent's refusal to pay that obligation as a means of frustrating his or her former spouse, especially when the result of that behavior is to penalize the children. Further, this court notes that this is not the first time the trial court has found the father in contempt *Page 796 
for failing to pay his child-support obligation. Thus, this court cannot say that the trial court abused its discretion in finding the father in contempt. See Stack v. Stack, supra; Phillippi v. State ex rel. Burke, supra.
The father also argues that the trial court erred in ordering him to pay postminority support for the daughter in an amount in excess of her college expenses. Following the presentation of ore tenus evidence, the trial court's judgment regarding postminority college support is entitled to a presumption of correctness, and that judgment will not be reversed absent a showing that the trial court abused its discretion or that its determination is plainly and palpably wrong. Smith v. Terry, 820 So.2d 839,840 (Ala.Civ.App. 2001).
 "In Alabama, the general rule is that a trial court has no jurisdiction to require a parent to provide support for a child who has reached the age of majority. However, there are exceptions to the general rule. The first exception is where the noncustodial parent has agreed to provide support for the child past the age of majority. Another exception is that a parent may be required to provide postminority support where the adult child is so mentally or physically disabled that he cannot support himself or herself. Last, a parent may be required to provide postminority support when application for postminority educational support is made before the child reaches the age of majority.
 "The Supreme Court of Alabama set out certain factors for the trial court to consider when ruling on a petition for postminority support. [Ex parte Bayliss, 550 So.2d 986 (Ala. 1989),] clearly specifies those factors that shall, and those that may, be considered by the trial court when it is deciding whether to order support for postminority college education. In an award of postminority educational support for a child of divorced parents, the trial court `"shall consider all relevant factors that shall appear reasonable and necessary, including primarily the financial resources of the parents and the child and the child's commitment to, and aptitude for, the requested education."' The court suggested that trial courts also should consider `the standard of living that the child would have enjoyed if the marriage had not been dissolved and the family unit had been preserved and the child's relationship with his parents and responsiveness to parental advice and guidance.' The trial court must also determine if the noncustodial parent has `sufficient estate, earning capacity, or income to provide financial assistance without undue hardship.' Undue hardship does not imply the absence of personal sacrifice, because many parents sacrifice to send their children to college.
 "Following Bayliss, [supra,] this court has held that the trial court must set reasonable limitations on the parent's responsibility for postminority education support, because a failure to do so may impose an undue hardship on the paying parent. These limitations include (1) limiting the support to a reasonable period, (2) requiring the child to maintain at least a `C' average, and (3) requiring that the child be enrolled as a full-time student.
 "This court has further held that without legal evidence as to the amounts required for books and tuition or for actual costs of room and board, we cannot determine whether the sums a parent is required to pay for postminority educational support would cause him undue hardship. Furthermore, when the judgment of the trial court has the potential to allow the child to prolong his undergraduate studies well beyond four years, by not requiring the child to take *Page 797 
a minimum number of courses each session and by not limiting the number of courses that the child can withdraw from each semester, it will not be upheld. This court has also held that a reasonable limitation would include limiting the expenses to be paid by a parent to a particular college or institution."
Penney v. Penney, 785 So.2d 376, 378-79 (Ala.Civ.App. 2000) (citations omitted) (first emphasis original; second emphasis added). See also Smithv. Terry, 820 So.2d 839, 841 (Ala.Civ.App. 2001).
It is undisputed that in this case the application for postminority educational support was made before the daughter reached the age of majority. The record indicates that the parties presented evidence regarding their financial resources, and that evidence indicated that the father had the ability to pay postminority support. However, the trial court heard no evidence concerning the expenses the daughter would incur in completing her education, except that she received a full-tuition scholarship; that she had taken out a $9,000 student loan; and that both parents had provided her with various amounts during her schooling.
In Thrasher v. Wilburn, 574 So.2d 839 (Ala.Civ.App. 1990), this court held that the trial court committed reversible error when it failed to take "evidence on the reasonable necessaries, including room and board, for the child to attend college after reaching majority." Thrasher v.Wilburn, 574 So.2d at 841. The trial court did not take evidence regarding the reasonable and necessary expenses the daughter will incur in attending college. Without such evidence, this court must conclude that the trial court erred in ordering the father to pay $200 per month in postminority support. See Penney v. Penney, supra.
The father also asserts that the trial court erred in ordering him to provide health insurance for the daughter because she had reached the age of majority.
 "The general rule regarding child support from a non-custodial parent is that the child is entitled to support only until the age of majority. Whitten v. Whitten, 592 So.2d 183, 185 (Ala. 1991). However, our supreme court has recognized two exceptions to this general rule: payment of post-minority support for a physically and/or mentally disabled child, see Ex parte Brewington, 445 So.2d 294 (Ala. 1983); and payment for educational support where application is made before the child reaches age 19. See Ex parte Bayliss, 550 So.2d 986 (Ala. 1989). . . .
 "This court has held that absent Brewington factors, a trial court has no authority to require that a noncustodial parent provide health insurance beyond the age of majority. Barnes v. State ex rel. Barnes, 653 So.2d 310 (Ala.Civ.App. 1994)."
Luce v. Luce, 681 So.2d 613, 616 (Ala.Civ.App. 1996). See also Gage v.Cochran, 777 So.2d 720 (Ala.Civ.App. 2000); Self v. Self, 685 So.2d 732
(Ala.Civ.App. 1996) (citing Ex parte Brewington, 445 So.2d 294 (Ala. 1983)); Hayes v. Hayes, 620 So.2d 49 (Ala.Civ.App. 1993). The trial court's December 14, 2001, judgment orders the father to maintain health insurance coverage for the daughter. Therefore, the trial court erred in ordering the father to maintain health insurance for the daughter's benefit. See Gage v. Cochran, supra.
The father argues that the trial court erred in ordering him to pay the mother an attorney fee. The trial court's award of attorney fee in a modification case is within the sound discretion of the trial court and that award will not be reversed absent an abuse of discretion. *Page 798 Amie v. Conrey, 801 So.2d 841 (Ala.Civ.App. 2001). The court considers several factors in determining whether to award an attorney fee and the amount of the award, including "the earning capacity of the parties, the results of the litigation, and the financial circumstances of the parties." Amie v. Conrey, 801 So.2d at 847.
Given the facts of this case, this court concludes that the trial court did not err in ordering the father to pay the mother an attorney fee in the amount of $2,500.
The portion of the trial court's December 14, 2001, judgment ordering the father to pay child support of $499 per month, ordering the father to pay a child-support arrearage of 8,142.18, finding of the father in contempt, and awarding the mother an attorney fee is affirmed. The portion of the trial court's December 14, 2001, judgment ordering the father to pay $200 per month in postminority support and ordering the father to provide health insurance for the daughter is reversed, and the cause is remanded for the trial court to take evidence of the reasonable and necessary expenses, including room and board, for the daughter's college attendance.
The appellee's request for an attorney fee is denied.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
Yates, P.J., and Pittman, J., concur.
Crawley, J., concurs specially.
[1] The record indicates that the father had offset the mother's request for reimbursement by his payments directly to the children's health-care providers on other occasions. However, the record does not indicate, and the father does not present evidence regarding, whether the mother paid amounts directly to the health-care providers on those occasions.