Ronald D. Gates (the "husband") and Debra L. Gates (the "wife") were married in 1980. They separated in October 1998 when the husband accused the wife of *Page 748 
having an affair with her business partner. The parties have three children, one of whom was 19 and was attending college at the time of trial. After a trial, the court divorced the parties, specifically enumerating as a ground for the divorce the husband's physical abuse of the wife.
The judgment awarded the wife, among other things, the marital residence, subject to a mortgage, her own retirement accounts, and a 1997 Jeep Wrangler sport-utility vehicle. She was also awarded $500 per month in periodic alimony. In accordance with the parties' agreement, the parties were awarded joint legal custody of the minor children; the wife was awarded physical custody.
The judgment awarded the husband a boat and trailer, his two 401(k) accounts, and a 1995 GMC Jimmy sport-utility vehicle. The husband was also awarded all shares of Occidental Petroleum stock owned by the parties, but he was required to sell $10,416.61 worth of stock and to give those moneys to the wife. In addition to the $500 per month in alimony, he was also ordered to pay $1,002 per month in child support for the two minor children. The judgment also required him to be responsible for one-half of the college expenses of each of his three children.
The trial court awarded the wife one-half of the husband's two retirement accounts, the Koch Gateway Pipeline Company Employees Retirement Plan and the Koch Industries Employee Pension Plan. Specifically, the paragraph regarding these accounts reads:
 "The [husband] has two (2) additional retirement plans listed under Koch Industries Employee Pension Plan and/or Koch Gateway Pipeline Company Employees Retirement Plan in which the [wife] and the [husband] shall be ordered to share equally (one-half each) at the time these accounts begin to pay monthly. The [husband] is hereby ordered to take all steps necessary to insure that the [wife] shall receive one-half (½) of the benefits which have been accrued in these accounts as of the date of this Final Decree of Divorce."
After the trial court denied his postjudgment motion on the issue of alimony, the husband appealed. He argues on appeal that the trial court's award of retirement benefits to the wife, quoted above, is ambiguous; that the court impermissibly awarded the wife benefits that would accrue after the date of divorce; that the wife failed to prove the present value of the retirement accounts or that the husband's interest in those accounts had vested; and that Ala. Code 1975, § 30-2-51(b)(1), requires that the wife prove that the retirement benefits accrued for a 10-year period during the marriage. He also challenges the trial court's award of $500 per month in alimony to the wife and the award of post-minority support to his minor children.
At trial, the wife testified that she and the husband had been married for 20 years and that they had three children, ages 19, 16, and 14. She testified that she was employed by the Federal Bureau of Investigation in the Mobile field office as an investigative-communications assistant and that her yearly salary was $25,435. She also stated that the husband had been physically abusive to her throughout their marriage.
The wife explained that, in her opinion, her husband became jealous when she reentered the work force in 1996. Before that time, according to the wife, she was not around men other than her husband and the husband had no reason to be jealous. She said she met the man she was alleged to have had an affair with when he was a deputy and she was a dispatcher at the Baldwin County Sheriff's *Page 749 
Department. She explained that her relationship with this man was platonic and that she had never had a romantic or sexual relationship with him. She said that they had become business partners in a worthless-check-recovery business. She further testified that her husband had listened to and recorded her conversations with her business partner and with others without her knowledge. The husband denied that he was physically abusive to the wife throughout the marriage; however, he admitted to one particular incident of abuse early in the marriage when he was "drunk." He testified that he had worked at Koch Gateway Pipeline (or its predecessor company) for 23 years. He explained that he and the wife had separated in October 1998 after he confronted her about her relationship with her business partner. He testified that he desired the court to "split everything fifty-fifty."
The wife testified about the parties' assets. She explained that the husband had two 401(k) accounts worth a combined total of approximately $103,000. She also testified that he had two other retirement accounts, the Koch Industries Employee Pension Plan and the Koch Gateway Pipeline Company Employees Retirement Plan (hereinafter referred to collectively as "the retirement accounts"), that would pay out, upon the husband's retirement, $406.58 and $555.57, respectively, monthly. The wife testified that she had two retirement accounts — one with Caddo Parrish, Louisiana, and one with the Baldwin County Sheriff's Department, worth $2,102 and $3,275, respectively. She requested that she be allowed to keep her retirement accounts and that the husband be awarded his 401(k) accounts. However, she requested that the trial court divide the retirement accounts. The wife testified that the marital residence had been appraised at $197,500 and that the parties still owed $38,000 on the note secured by the mortgage on that residence. She also explained that the home needed several repairs and that those repairs would cost $14,000.
The husband testified that he agreed with the testimony of the wife concerning the valuations of the marital residence and his 401(k) accounts. He did state, however, that the house had been appraised in a "drive-by" appraisal for refinancing purposes at $208,000. He did not object to the wife's valuation of the retirement accounts, and he put on no evidence concerning the value of those accounts, the dates during which they had accrued, or the date upon which his interest in them had become vested.
 Alimony
The husband argues that the alimony award financially cripples him. Generally, an award of alimony is entrusted to the sound discretion of the trial court and that award will not be set aside absent an abuse of that discretion. O'Neal v. O'Neal, 678 So.2d 161, 164 (Ala.Civ.App. 1996). In making the decision to award alimony, the trial court may consider several factors, including the parties' respective present and future earning capacities, their age and health, their conduct, the duration of the marriage, and the value and type of marital property.Lutz v. Lutz, 485 So.2d 1174 (Ala.Civ.App. 1986). "[T]he purpose of periodic alimony is to support the former dependent spouse and enable that spouse, to the extent possible, to maintain the status that the parties had enjoyed during the marriage, until that spouse is self-supporting or maintaining a lifestyle or status similar to the one enjoyed during the marriage." O'Neal, 678 So.2d at 164 However, "[t]he amount awarded to one spouse should not `cripple' the other spouse." Daugherty v. *Page 750 Daugherty, 579 So.2d 1377, 1380 (Ala.Civ.App. 1991); see Rubert v.Rubert, 709 So.2d 1283, 1284-85 (Ala.Civ.App. 1998).
The wife's earning record, admitted as an exhibit at trial, indicates that her gross monthly pay is $2,113, and that her net pay is $1,275 per month. The wife's expenses total about $4,000 per month. In 1998, the husband earned $60,445; in 1999, he earned $59,327. The husband presented an exhibit outlining his gross pay, the deductions from that pay, his net pay, and his expenses. The husband's gross income is $1,920 biweekly. After deductions, including federal and state withholding and insurance, the husband's net pay equals $1,237.82 biweekly, or $2,682 per month. According to the husband's exhibit, his living expenses are $1,736 monthly. The wife indicated that the husband's expenses included costs for some "frivolous" items like a YMCA membership, a new videocassette recorder, and tuxedo rentals for Mardi Gras balls.
 Table Showing Monthly Income/Expenses for Husband and Wife
HUSBAND WIFE
$2,682 net income[1] $1,275
-1,002 child support +1,002
-500 alimony +500
-60 college tuition -60
$1,120 cash for expenses $2,717
-1,736 monthly living expenses[2] -4,000
$ 616 deficit $1,283
This table illustrates the classic financial morass encountered upon a divorce when the incomes of the former spouses prove inadequate to maintain two separate households. The phrase from O'Neal, 678 So.2d at 164, "to the extent possible" recognizes that both former spouses will have to live on substantially less income. The trial court's award of alimony clearly puts a financial strain upon the husband; however, that same award of alimony does not serve to financially enrich the wife, who still is unable to meet her living expenses. Neither party can maintain his or her former status, which resulted from the combined incomes, now that those incomes must support two households. The trial court's award of alimony is affirmed.
 Postminority Support
The husband also argues that the trial court erred by prematurely awarding postminority educational support for his two minor children,[3]
ages 16 and 14 at the time of trial. The husband correctly points out that this court has reversed awards of postminority support made before the minor child had reached the age of 18 and was preparing to attend college. See Berryhill v. Reeves, 705 So.2d 505, 508 (Ala.Civ.App. 1997) (16-year-old); Mansmann v. State ex rel. Eiland, 590 So.2d 308, 309
(Ala.Civ.App. 1991) (17-year-old and 15-year-old); Berry v. Berry,579 So.2d 654, 656 (Ala.Civ.App. 1991) (14-year-old). Specifically, this court has premised those reversals on the fact that the evidence concerning the parent's ability to pay, the child's aptitude for college, and the expenses expected to be incurred by the child was lacking or was speculative at the time of the award. Berryhill, 705 So.2d at 508. The wife presented no evidence in this case regarding the aptitude of the minor children for college or the expected expenses of a college education for either child. Accordingly, we must reverse the trial court's award of postminority support for the minor children.
 Retirement Accounts
The father also argues that the trial court erred in awarding the wife *Page 751 
one-half of his retirement accounts. He first argues that the trial court's judgment, stating that the husband and the wife are to "share equally (one-half each) at the time these accounts begin to pay monthly" and "that the [wife] shall receive one-half (½) of the benefits which have been accrued in these accounts as of the date of this Final Decree of Divorce," is ambiguous and awards the wife more than she is entitled to under Ala. Code 1975, § 30-2-51(b)(3). Although the first portion of quoted language does appear to indicate that the wife is awarded one-half of the retirement accounts as of the date they are paid out, when read together, and in light of the requirement in the statute that the valuation of the retirement benefits to be paid to a former spouse must be made at the time of the divorce, see § 30-2-51(b), the paragraph clearly intends to award the wife one-half of the retirement benefits accrued as of the date of the divorce to be paid at the time the benefits are paid to the husband. See § 30-2-51(c).
The husband further argues that the trial court could not have awarded retirement benefits in this case because, he says, the wife failed to prove that his interest in those benefits had vested, the present value of those benefits, or that they had accrued for a 10-year period as he argues is required by the statute. The husband acquiesced in the wife's testimony concerning the valuation of each of his retirement accounts at trial. He did not object at any time to the legality of a division of those accounts, although he did voice a preference that only one retirement account be divided. In light of the fact that the husband failed to raise the issue in his postjudgment motion, we cannot consider his arguments concerning the sufficiency of the evidence on the retirement-accounts issue. See Ex parte James, 764 So.2d 557, 559 (Ala. 1999) (holding that to preserve for appeal the issue of the sufficiency of the evidence when the trial court does not make specific findings of fact after a bench trial, a litigant must file a motion for new trial);see also Rubert v. Rubert, 709 So.2d 1283, 1285 (Ala.Civ.App. 1998) (affirming the division of a retirement account when the husband failed to object to the division at trial).
 Conclusion
The trial court's judgment is affirmed insofar as the amount of alimony awarded to the wife and insofar as it awarded the wife one-half of the retirement accounts; it is reversed insofar as it awarded postminority support for the parties' minor children. The cause is remanded for entry of an order consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
Yates, P.J., and Thompson, Pittman, and Murdock, JJ., concur.
[1] Net income reflects the amount of cash available after the deduction of federal and state withholding and health-insurance payments.
[2] Court-ordered payment of debt may be included in living expenses.
[3] He does not challenge the award of postminority support to his oldest child.