[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1253 
Jayna M. McKnight ("the wife") sued Robert A. McKnight ("the husband") for a divorce. In her complaint, the wife sought custody of the parties' three children, a property division, and child support. The trial court conducted a hearing on June 5, 2003, at which it received ore tenus evidence. On July 1, 2003, the trial court entered a judgment in which it divorced the parties; awarded the wife alimony and custody of the parties' children; ordered the husband to pay child support; and divided the parties' property. The husband timely appealed.
The record indicates that at the time of the June 5, 2003, hearing in this matter, the parties had been married for 22 years. The parties separated in August 2001. Three children were born of the parties' marriage; at the time of the hearing, the children were 18, 9, and 5 years of age. The husband has not appealed the trial court's award of primary physical custody of the parties' children to the wife. Therefore, we do not set forth in this opinion the testimony and evidence that were pertinent only to that issue.
The husband is a medical doctor; the wife graduated high school and attended college for one and a half years. The husband and the wife married shortly before the husband began attending medical school. The wife testified that she worked as a secretary during the time the husband *Page 1254 
was in medical school but that she has not worked in the 18 years since the husband's graduation from medical school.
In her complaint for a divorce, the wife alleged that the parties were incompatible. The record does not indicate what event, if any, precipitated the parties' separation. The evidence presented at the hearing indicates that the husband had a romantic relationship with a nurse ("the nurse") who works in the husband's medical practice. The wife did not allege that the husband's relationship with the nurse caused the breakdown of the parties' marriage. The husband refused to answer most of the wife's questions regarding his relationship with the nurse, citing as a basis for that refusal the Fifth Amendment to the United States Constitution. The husband "took the Fifth" with regard to all questions pertaining to his relationship with the nurse during the time before the parties' separation.[1]
The record does indicate, however, that the husband spent money on the nurse during times that he claimed he could not afford to provide certain types of support for the wife and the parties' three children.
The wife admitted that she had a drinking problem during the parties' marriage and that she is a recovering alcoholic. The wife testified that she regularly attends Alcoholics Anonymous ("AA") meetings and that she last consumed alcohol approximately 10 years before the hearing in this matter.
The wife testified that she has no job skills but that she would like to return to college to become a teacher so that her work schedule would correspond to the times the parties' two younger children are in school. She asked the trial court to order the husband to support her while she obtains a college degree. The wife submitted to the trial court an exhibit showing her monthly budget of expenses totaling $3,750 per month. That budget did not include an amount for the payment of the credit-card indebtedness in the wife's name; that indebtedness totaled approximately $9,500. The wife testified that she had used the credit cards during the parties' separation and that the husband had promised to reimburse her for some of the charges she had made on her credit cards.
Since shortly after the parties' separation, the wife has been involved in a relationship with a man named Charles White. The wife met White through AA. The wife testified that White does not spend the night at her house when the children are present. However, according to the wife, White arrives at her home early each morning and stays until after the children go to bed.
The wife denied that she and White share expenses. The wife testified that the budget she submitted into evidence did not include any expenses that pertain to White. The wife admitted that White's cellular telephone is on her cellular-service bill, and she stated that White repays her for the cost of his cellular telephone.
The husband's income in recent years is as follows: in 1999, $147,702; in 2000, $132,907; and in 2001, $165,967. The husband's W-2 form for 2002 indicated that his income was $103,397. The husband testified that his 2001 income was "inflated" *Page 1255 
because he withdrew $20,000 from a retirement account to repay some debts and that withdrawal was treated, for tax purposes, as income. He admitted signing a financial statement that set forth his 2002 income as being $165,967; a note on the financial statement indicates that that figure is based upon the husband's 2001 income. The husband claimed that a bank officer filled out the financial-statement form and that he did not read it before he signed it.
In August 2002, the husband's two partners in his medical practice left the practice; the husband is currently the only doctor in that practice. In response to a question by the wife, the husband denied that the two doctors left the medical practice because they were not comfortable with his relationship with the nurse. The husband stated that, as a result of the other doctors' leaving, the expenses of the practice had increased and, therefore, his income has decreased.
At the June 5, 2003, hearing, the husband testified that since January 2003 he had received income from his practice based on a gross salary of $75,000 per year; he stated that his net income from that salary was $58,900 per year, or approximately $4,900 per month. The husband asked the trial court to "use the figure of $75,000 as [his] personal income for child-support purposes."
Counsel for the wife cross-examined the husband regarding his income based upon nine months of checking-account records during the period between May 2002 and May 2003.[2] Those records indicate that the husband made deposits during those months totaling $102,537, which resulted in average monthly deposits of $11,393 for those months.
The husband testified that in January 2003 he withdrew $4,960 from his retirement account to pay bills, and he stated that he deposited that amount in his personal checking account. However, deposits for the month of January 2003 are not included in the $102,537 in deposits discussed above. The husband stated that he "very rarely" paid personal expenses from his business account, but he admitted that he had paid from his business account a fee of $4,000 to his attorney. The husband also stated that he had to take funds from his savings, which was apparently his retirement account, in order to meet his court-ordered support obligations during the pendency of the divorce proceedings.
The wife presented evidence that the husband had withdrawn $19,725 from his retirement account in 2002 and that he had withdrawn another $17,050 from that account in 2003. In addition, the husband's business records indicate that as of October 31, 2002, he had withdrawn $54,100 in "advances" from his medical practice and that he had received loans from the practice totaling $6,200. It is not clear from the record whether the husband deposited those amounts into his checking account, i.e., whether those amounts were included in the nine months of deposits about which the wife had questioned the husband on cross-examination. The husband testified that he thought the $54,100 in advances from his practice was the total amount of advances he had received during the existence of the practice, as opposed to being the amount of advances he had received in 2002. Also, during the parties' separation, the husband sold a tractor for approximately $3,000; he testified that he used the proceeds from that sale to pay bills. *Page 1256 
In addition, the husband sold a boat shortly before the hearing in this matter; the husband did not testify regarding how much money he received from the sale of the boat.
The marital home is located on a five-acre parcel of property, and the parties also own a parcel (hereinafter "the second parcel") adjacent to the one on which the marital home is located. The husband testified, based on an exhibit he submitted into evidence, regarding the values of the parties' marital property. The husband estimated the value of the marital home and the land on which that home was located to be $275,000; he stated that that property is subject to mortgage indebtedness in the amount of $220,000 for a first mortgage and additional indebtedness, in the form of a second mortgage, in the amount of $21,000. The monthly payments on those mortgages are $1,800 and $600, respectively.
The husband valued the second parcel at $77,000. The second parcel is subject to the first mortgage on the marital home. The second parcel is also subject to additional indebtedness totaling $45,000; the monthly payment on that debt is $500. The husband indicated that there was no equity in the parties' vehicles and that the value of his retirement account was $49,974.12. The husband testified that his business liabilities outweigh his business assets.
The wife submitted as an exhibit a letter from the husband to her in which the husband listed the parties' assets and debts and assigned values to each. That letter is not dated, and the record does not indicate when the husband sent it to the wife. In the letter, the husband indicated, among other things, that the marital home was worth $250,000, that the second parcel was worth $100,000, and that the parties had $140,000 in savings. The husband indicated that the first mortgage on the parties' marital home was $200,000; otherwise, the other debts listed in the letter were substantially similar to the values to which the husband testified at the hearing. The husband testified that although he had believed the second parcel was worth $100,000, the highest offer he received for that property when he attempted to sell it was $77,000.
The husband testified that he still owed approximately $77,000 in student-loan debt and that he made monthly payments of $800 toward the parties' consumer credit-card debt. An exhibit the husband submitted indicated that the parties had approximately $6,300 in consumer credit-card debt and that the minimum monthly payment on that debt was approximately $100. The husband testified that after the parties' separation his personal living expenses totaled $3,592.50 per month.
In its judgment, the trial court stated that it "imputes and/or finds" that the husband's income is approximately $175,000 per year. The trial court ordered the husband to pay child support in the amount of $2,800 per month for the parties' children. As further child support, the trial court ordered the husband to maintain life insurance for the benefit of the children and to pay their health-related expenses; the husband was ordered to continue providing both of those support obligations for each child until each child reached the age of 23. The trial court also ordered that the husband purchase a vehicle worth not less than $15,000 for the parties' oldest daughter. The husband was also ordered to pay postminority educational support for the parties' three children.
The property-division provisions of the trial court's judgment require that the parties' marital home be sold and that the husband pay the wife $150,000 for her *Page 1257 
interest in that home. The trial court awarded the wife the second parcel, free of any mortgage indebtedness. The trial court ordered the husband to pay the wife's credit-card indebtedness; to pay $6,000 to reimburse the wife for a vehicle she had purchased during the parties' separation; and to pay the wife $15,00 toward her attorney fee. In addition, the husband was ordered to pay the wife $4,000 per month in alimony until such time as those payments totaled $150,000, and to pay $2,000 a month in "periodic alimony" thereafter.
 Child Support
The husband argues on appeal that the trial court abused its discretion in establishing his child-support obligation for the parties' three children. As part of his argument on this issue, the husband contends that there is no evidence to support the trial court's determination, made for child-support purposes, that his income is $175,000 per year. The husband is correct in his assertions that the evidence pertaining to his annual income over the most recent years was undisputed. However, under the "Child Support Guidelines" set forth in Rule 32, Ala. R. Jud. Admin., the trial court may impute income to a parent that the trial court determines to be voluntarily unemployed or underemployed. Rule 32(B)(5), Ala. R. Jud. Admin. A trial court is not required to make an explicit finding that a parent is unemployed or underemployed; moreover, because this court must assume that the trial court made the factual findings necessary to support its judgment, a finding of voluntary unemployment or underemployment may be deemed to be implicit in the trial court's judgment. Berryhill v. Reeves, 705 So.2d 505 (Ala.Civ.App. 1997). See also Herboso v. Herboso, 881 So.2d 454 (Ala.Civ.App. 2003); and Turner v. Turner, 745 So.2d 880 (Ala.Civ.App. 1999).
 "In determining the amount of income to be imputed to a parent who is unemployed or underemployed, the court should determine the employment potential and probable earning level of that parent, based on that parent's recent work history, education, and occupational qualifications, and on the prevailing job opportunities and earning levels in the community."
Rule 32(B)(5), Ala. R. Jud. Admin.
The husband is a medical doctor, and, in the past, he has reported his income as being as high as $165,000 per year. The record indicates that the husband sets his own salary from his medical practice and that he has taken advances and loans from his medical practice. The husband insisted that the expenses of his medical practice had increased since his partners had left the practice and that those increased costs had led to a decrease in his income. However, the record would support an inference that the husband's partners left the medical practice because of the husband's romantic relationship with one of the medical practice's employees.
Further, the wife presented evidence that during nine months between May 2002 and May 2003 the husband made deposits into his personal checking account that averaged $11,393 per month. A net income of $11,393 per month is approximately that which would result from a gross income of $175,000 per year. Therefore, we cannot agree with the husband's assertion that the trial court merely "grabbed a figure out of the air" when it imputed an annual income of $175,000 to him for the purposes of determining his child-support obligation. Under the facts of this case, we cannot say that there was not evidence in the record on appeal to support the trial court's decision to impute to the husband an annual income of $175,000. *Page 1258 
The husband argues that the trial court erred in requiring him to pay $2,800 per month in child support for the parties' three children. Where the parties' combined monthly gross income exceeds $10,000 per month, child support cannot be calculated pursuant to the tables contained as an appendix to Rule 32, Ala. R. Jud. Admin. Where the parties' combined income exceeds the $10,000-per-month maximum in those child-support tables, the establishment of a parent's child-support obligation is within the trial court's discretion. Dyas v. Dyas, 683 So.2d 971
(Ala.Civ.App. 1995); Garrett v. Garrett, 637 So.2d 1376
(Ala.Civ.App. 1994). However, "a trial court's discretion is not unbridled and . . . the amount of child support awarded must relate to the reasonable and necessary needs of the children as well as to the ability of the obligor to pay for those needs."Dyas v. Dyas, 683 So.2d at 973.
In this case, the wife had not worked outside the home during the last 18 years of the parties' marriage, and, although she planned to return to college to obtain a teaching degree, she testified that she wanted to remain available to the parties' two younger children. The wife submitted a budget that set forth the monthly expenses for her and the children that totaled $3,750 per month; that budget included amounts for school expenses such as uniforms and lunches. In establishing the husband's child-support obligation, the trial court found, among other things, that the $2,800-per-month child-support award was "in accord with the true income of the [husband] and the needs of the children."
The husband contends that the wife's budget setting forth the household expenses for her and the parties' children should be reduced to reflect that, because he pays all of the parties' mortgage indebtedness, the wife has no housing-related expenses. However, the trial court ordered that the parties' marital home be sold and that the husband pay the mortgage indebtedness pending the sale of the home. Therefore, after the sale of the parties' marital home, the wife will have the expense of providing housing for herself and the parties' three children. Given the evidence in the record on appeal, we cannot say that the trial court's establishment of the husband's child-support obligation constituted an abuse of its discretion. We note that the parties' oldest child will reach the age of majority approximately one year after the entry of the trial court's judgment. At that time, the husband may petition to reduce his child-support obligation.
 Alimony and Property Division
In his brief on appeal, the husband makes three separate arguments to the effect that the trial court erred in fashioning its property division and its award of alimony. On appeal, issues pertaining to a property division and an award of alimony are to be considered together. Parrish v. Parrish, 617 So.2d 1036
(Ala.Civ.App. 1993). Therefore, we consider those arguments as pertaining to one issue.
 "A trial court's division of property following an ore tenus presentation of evidence is presumed correct on appeal and will not be reversed absent a plain and palpable abuse of discretion. Hall v. Mazzone, 486 So.2d 408 (Ala. 1986); Welch v. Welch, 636 So.2d 464 (Ala.Civ.App. 1994); Parrish v. Parrish, 617 So.2d 1036 (Ala.Civ.App. 1993). A property division is required to be equitable, not equal. Parrish v. Parrish, supra. In fashioning a property division, the trial court considers the parties' earning abilities; their probable future prospects; their ages, health, and station in life; the duration of the marriage; and the conduct of the parties with regard to *Page 1259 
the breakdown of the marriage. Echols v. Echols, 459 So.2d 910 (Ala.Civ.App. 1984)."
Roberts v. Roberts, 802 So.2d 230, 235 (Ala.Civ.App. 2001). Also, in fashioning its property division and its alimony award, a trial court may consider a party's conduct with regard to the breakdown of the marriage, even where the trial court divorces the parties on the basis of incompatibility. Nichols v.Nichols, 824 So.2d 797 (Ala.Civ.App. 2001) (citing Courtrightv. Courtright, 757 So.2d 453 (Ala.Civ.App. 2000)).
In its judgment, the trial court awarded the wife approximately $250,000 in cash and assets; none of the assets are subject to indebtedness. The husband was awarded his retirement account, valued at the time of the hearing at approximately $47,000; we note that during the pendency of the divorce proceeding the husband had made substantial withdrawals from that account. The husband was ordered to pay the indebtedness on all of the parties' property. The trial court also ordered the husband to pay the wife $4,000 per month in alimony until a total of $150,000 has been paid, and to pay monthly alimony of $2,000 thereafter.
In this case, the parties are approximately the same age. They were married for 22 years and had three children. The wife did not work outside the home for many years, and she had not completed her college education. The wife testified that she would like to become a teacher so that her work schedule would enable her to be available to the parties' younger two children. The husband is a medical doctor, and his future earning potential can be expected to far exceed the wife's future earning potential. Although the record indicates that the husband is involved in a relationship with a nurse who works for him, there is no evidence in the record on appeal, and the wife did not maintain, that that relationship caused the breakdown of the parties' marriage.
A property division is not required to be equal, only equitable, and a property division may favor one spouse over the other. Parrish v. Parrish, supra. In this case, the property division greatly favors the wife; the wife was awarded virtually all of the parties' assets, and the husband was ordered to pay the indebtedness on those assets. In addition to requiring the husband to pay the indebtedness on the parties' assets and $2,800 per month in child support for the parties' three children, the trial court ordered the husband to pay the wife $4,000 per month in alimony (which would later decrease to $2,000 per month). The purpose of alimony is to allow the dependent spouse to preserve, "to the extent possible," O'Neal v. O'Neal, 678 So.2d 161, 165
(Ala.Civ.App. 1996), or "if possible," Laws v. Laws,653 So.2d 293, 295 (Ala.Civ.App. 1994), the status that the parties enjoyed during their marriage. However, the realities of maintaining two separate households on the husband's income must also be considered. See Gates v. Gates, 830 So.2d 746, 750
(Ala.Civ.App. 2002) (this court concluded that "[n]either party can maintain his or her former status, which resulted from the [parties'] combined incomes, now that those incomes must support two households").
After carefully reviewing the record and considering the facts of this case, we must conclude that, even given the disparity in the earning abilities and future prospects of the parties, the trial court's property division and alimony award, when considered together, are not equitable. Therefore, we must reverse the property-division and alimony portions of the trial court's judgment. We note that in reaching this holding this court does not comment on the credibility of the husband with regard *Page 1260 
to his assertions pertaining to his income or his income potential, and we recognize that the trial court might well have disbelieved the husband's testimony on those issues. SeeWilliams v. Williams, 402 So.2d 1029 (Ala.Civ.App. 1981) (noting that the trial court is in the best position to observe the witnesses and to assess their credibility). On remand, the trial court is to consider the factors discussed in Roberts v.Roberts, supra, and its own assessment of the evidence in fashioning a more equitable property division and alimony award.
Award of Health-Related Expenses and Maintenance of Life Insurance After the Children Reach the Age of Majority
The husband next argues that the trial court erred in requiring him to pay health-related expenses and to maintain a life-insurance policy for the benefit of the children for a period after each of the parties' children reaches the age of majority.
 "In Alabama, the general rule is that a trial court has no jurisdiction to require a parent to provide support for a child who has reached the age of majority. See Beavers v. Beavers, 717 So.2d 373
(Ala.Civ.App. 1997); Whitten v. Whitten, 592 So.2d 183 (Ala. 1991). However, there are exceptions to the general rule. The first exception is where the noncustodial parent has agreed to provide support for the child past the age of majority. Beavers, supra (citing Andrews v. Andrews, 437 So.2d 1306
(Ala.Civ.App. 1983)). Another exception is that a parent may be required to provide postminority support where the adult child is so mentally or physically disabled that he cannot support himself or herself. Beavers, supra (citing Ex parte Brewington, 445 So.2d 294 (Ala. 1983)). Last, a parent may be required to provide postminority support when application for postminority educational support is made before the child reaches the age of majority. Beavers, supra (citing Ex parte Bayliss, 550 So.2d 986 (Ala. 1989))."
Penney v. Penney, 785 So.2d 376, 378 (Ala.Civ.App. 2000).
In Luce v. Luce, 681 So.2d 613 (Ala.Civ.App. 1996), the trial court ordered the father to provide health insurance for the parties' child while the child remained a college student earning at least a "C" average or until the child was 22 years of age. This court reversed the trial court's judgment, noting that the only exceptions to the general rule that a noncustodial parent must provide support for a child only until the age of majority were where the child was physically or mentally disabled or where application was made for the payment of college expenses. Lucev. Luce, 681 So.2d at 616. This court concluded that "[t]he trial court's attempt to place both academic and age restrictions on the father's obligation to provide health insurance does not bring the payment of post-minority health insurance within the exception for continued educational support." Id. See also Amarov. Amaro, 843 So.2d 787 (Ala.Civ.App. 2002) (reversing that part of a trial court's judgment requiring a noncustodial parent to provide health insurance for a child past the age of majority).
In this case, as in Luce v. Luce, supra, and Amaro v.Amaro, supra, the trial court ordered the husband to provide health insurance and to pay all of the children's health-related expenses past the times at which the children will reach the age of majority; there is no evidence in the record that the husband agreed to do so. Luce v. Luce, supra, and Amaro v. Amaro, supra, clearly establish that courts *Page 1261 
may not require a noncustodial parent to pay health-related expenses for a child who is not disabled and that such expenses do not fall within the exception allowing for the payment of college expenses. Therefore, we reverse that part of the trial court's judgment that requires the husband to provide for the children's health-related expenses past the age of majority.
Similarly, we must conclude that the trial court also erred in requiring the husband to maintain a life-insurance policy for the benefit of the children for a period after each child reaches the age of majority. In Whitten v. Whitten, 592 So.2d 183 (Ala. 1991), our supreme court considered a case in which a trial court, in entering a divorce judgment, ordered a noncustodial parent, the father, to maintain life insurance for the benefit of his minor child. The father later changed the designation of the beneficiary of his life-insurance policy, and soon thereafter he died. The child, who was no longer a minor, sued to recover the proceeds of the father's life-insurance policy. The trial court awarded the child the proceeds of the life-insurance policy, but our supreme court reversed that judgment. Whitten v. Whitten, supra. The court determined that the requirement to maintain life insurance in the divorce judgment was in the nature of a child-support award. The court concluded that the award of the life-insurance proceeds to the child amounted to an award of postminority support that did not come within the exceptions to the general rule that a parent is not required to provide postminority support for a child. Whitten v. Whitten, 592 So.2d at 186. See also Jordan v. Jordan, 688 So.2d 839 (Ala.Civ.App. 1997) (characterizing as child support a requirement that a noncustodial parent maintain life insurance for the benefit of the child until the child reached the age of majority or was emancipated).
The trial court required the husband to maintain life insurance for the benefit of the parties' children after the children reached the age of majority. However, because that form of child support does not come within the exceptions to the general rule that a noncustodial parent is not required to pay support after a child reaches the age of majority, we must reverse that award.
 Award of Postminority Educational Support for the Parties' Younger Two Children
The husband argues that the trial court erred in ordering him to pay college expenses for the parties' younger two children because, he argues, that award is premature. The husband points out that the younger two children were 9 years old and 5 years old at the time of the hearing and that there is no evidence of their aptitude for or desire to attend college.
 "We have stated that `to declare the existence of such an obligation [to pay for a child's college education] before the child has reached or nearly reached graduation from high school and before all of the relevant factors have been presented and considered by the court is premature and improper.' Mansmann v. State ex rel. Eiland, 590 So.2d 308, 309 (Ala.Civ.App. 1991) (citing Berry v. Berry, 579 So.2d 654 (Ala.Civ.App. 1991))."
Berryhill v. Reeves, 705 So.2d at 508.
In Berryhill v. Reeves, supra, this court reversed a postminority-educational-support award where the child was 16 years old and where there had been no evidence pertaining to the child's desire to attend college or his aptitude for a college education. In another case, Gates v. Gates, supra, this court reversed a postminority-educational-support award where the children at issue were 16 and 14 at the time of the hearing and the wife had failed *Page 1262 
to present evidence regarding the children's aptitude for a college education or the expenses related to such an education. Similarly, we must conclude that in this case the trial court's award of postminority educational support for the parties' younger two children was premature. However, "we note that the trial court retains jurisdiction to receive all relevant evidence concerning this matter at an appropriate time." Berryhill v.Reeves, 705 So.2d at 508.
 Limitations on Postminority-Educational-Support Award
The husband next contends that although he does not object to contributing to his oldest child's college expenses, the trial court should have placed appropriate limitations on his obligation to do so. In this case, the trial court ordered that the husband be responsible for postminority educational costs such as "tuition, room and board, mandatory fees, books and reasonable travel to and from [college]." The trial court's judgment then limited the husband's financial responsibility with regard to postminority educational expenses to the average costs of several public universities in this state.
 "This court has held that a trial court must set reasonable limitations on the parent's postminority-support obligation. `"These limitations include (1) limiting the support to a reasonable time period, (2) requiring the child to maintain at least a `C' average, and (3) requiring the child to be enrolled as a full-time student."' Ullrich v. Ullrich, 736 So.2d 639, 643 (Ala.Civ.App. 1999) (quoting Bahri v. Bahri, 678 So.2d 1179, 1181
(Ala.Civ.App. 1996))."
Manring v. Manring, 744 So.2d 919, 922 (Ala.Civ.App. 1999) (reversing a postminority-educational-support award that did not address academic conditions the child must meet in order to be entitled to the support).
In Lindsey v. Patterson, 883 So.2d 223 (Ala.Civ.App. 2003), the trial court ordered a parent to pay $2,000 per semester toward her daughter's college-education expenses. This court noted the rule that a trial court must set reasonable limitations on a parent's duty to provide postminority-educational-support, and it reversed the trial court's judgment because the trial court failed to place those limitations on the parent's postminority-support obligation. Lindsey v. Patterson, supra.See also Hill v. Hill, 739 So.2d 501 (Ala.Civ.App. 1999) (reversing a postminority-educational-support award where the trial court failed to place a time restriction on the parent's support obligation); Thompson v. Thompson, 689 So.2d 885
(Ala.Civ.App. 1997) (the trial court erred in not placing temporal restrictions on a postminority-educational-support obligation). Given the foregoing authority, we must reverse that portion of the trial court's judgment awarding postminority support for the parties' oldest child because of that court's failure to place appropriate limitations on that support obligation. On remand, the trial court is ordered to place reasonable limitations on the husband's postminority-educational-support obligation for the parties' oldest child.
 Purchase of a Vehicle for the Parties' Oldest Child
The husband next argues that the trial court erred in requiring him to purchase a vehicle "with a value of not less than $15,000" for the parties' oldest child before that child leaves home to attend college. In that part of its judgment pertaining to the purchase of a vehicle for the parties' oldest child, the trial court also ordered *Page 1263 
the husband to provide insurance on that vehicle so long as the child was a full-time student maintaining at least a "C" average. The parties' oldest child had turned 18 at the time the trial court entered its July 1, 2003, divorce judgment, and she planned to begin college in the fall of 2003. Thus, the child would reach the age of majority after completing her first year of college.See § 26-1-1, Ala. Code 1975 (the age of majority in Alabama is 19 years of age). Therefore, although the child would still be a minor at the time the husband would be required, under the terms of the divorce judgment, to purchase the automobile for the child, it is clear from the language in that judgment that the trial court anticipated that that automobile be included as part of the child's postminority support. Further, that portion of the trial court's judgment requiring the husband to maintain insurance on the child's automobile during the time she was a full-time student must clearly be considered postminority support.
The husband cites Berryhill v. Reeves, supra, in support of his argument that the trial court erred in requiring him to purchase an automobile for the parties' oldest child. In that case, the trial court ordered the father to pay $10,000 toward the "purchase, insurance, and maintenance" of an automobile for the father's minor son. Berryhill v. Reeves, 705 So.2d at 506. This court reversed that portion of the trial court's judgment, citing, among other reasons, that there was no finding that the minor child needed the automobile for either medical or educational reasons. Berryhill v. Reeves, 705 So.2d at 507.
Further, with regard to the requirement that the husband provide automobile insurance for the time after the parties' oldest child reaches the age of majority, the husband cites Hillv. Hill, supra. The husband argues that the facts of that case are distinguishable from those of this case.
In Hill v. Hill, supra, the daughter commuted approximately 100 miles to college. The daughter testified that after an investigation of the relative costs, she had discovered that living at home with her mother and commuting to college was less expensive than living on her own near the college or on the college campus. The daughter reached the age of majority before the trial court entered its judgment requiring the father to pay $167 per month toward the daughter's commuting expenses. This court affirmed the trial court's judgment, finding that under the facts of that case the commuting expenses were directly related to the daughter's college education. Hill v. Hill, 739 So.2d at 502.
In another case, Winsett v. Woodward, 856 So.2d 844
(Ala.Civ.App. 2002), the parties' divorce judgment provided that the father would provide postminority educational support for the parties' two children. Specifically, the judgment ordered the father to be responsible for "`the higher education costs, expenses and fees'" for the children. Winsett v. Woodward, 856 So.2d at 845. The mother filed a petition for a rule nisi, apparently after the parties' daughter had reached the age of majority, alleging that the father had failed to pay postminority support for the daughter as required under the divorce judgment. The trial court ordered the father to pay a $14,000 postminority-support arrearage. On appeal, the father argued that the $14,000 included expenses outside the scope of his postminority-educational-support obligation. This court agreed, concluding:
 "[T]he trial court went far beyond those basic expenses and found that every expense incurred by the daughter during her two years at Auburn University was *Page 1264 
covered under the divorce [judgment]. We are not willing to say that automobile expenses, clothing costs, telephone costs, and general personal expenses are correctly included within the vague terms of `higher education costs, expenses and fees.'"
Winsett v. Woodward, 856 So.2d at 847 (emphasis added). This court reversed the trial court's judgment after concluding that the trial court's judgment improperly included amounts for, among other things, automobile expenses. Winsett v. Woodward, supra.
Similarly, in this case, the wife testified only that she wanted the husband to provide safe transportation for the parties' oldest daughter because the child would be leaving home to attend college. The wife specifically requested that the husband provide the child an automobile that was no more than two years old. In her testimony, the wife stated that she did not consider the requested automobile to be a "necessary item for college" or "an appropriate item to be considered . . . [as a] proper educational expense."[3]
Our review of the record indicates that the evidence does not demonstrate that the purchase of an automobile for the parties' oldest child during her minority was necessary to meet the child's medical or educational needs. See Berryhill v. Reeves, supra. Also, in this case, there is no evidence that the child intended to commute to college. See Hill v. Hill, supra. We have concluded elsewhere in this opinion that payment of the children's health-related expenses and the maintenance of a life-insurance policy for the benefit of the children for a period after each child reaches the age of majority are not proper postminority-support obligations. Similarly, we must conclude that, under the facts of this case, the trial court erred in requiring the husband to provide a vehicle and insurance for that vehicle for the parties' oldest child as an element of the husband's child-support and postminority-support obligations.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
YATES, P.J., concurs.
MURDOCK, J., concurs in part and concurs in the result in part, with writing.
CRAWLEY and PITTMAN, JJ., concur in the result, without writing.
[1] The limitations period for the crime of adultery is one year. See § 13A-13-2, Ala. Code 1975, and § 15-3-2, Ala. Code 1975. It is clear that the husband was not entitled to "plead the Fifth" in response to the wife's questions about his relationship with the nurse during any period at least one year before the June 5, 2003, hearing in this matter. Ex parte Moore,804 So.2d 245 (Ala.Civ.App. 2001). However, the wife did not object to the husband's refusal to answer those questions on the basis of the Fifth Amendment.
[2] Those months were May, June, October, November and December 2002, and February, March, April, and May 2003. It is not clear from the record whether the husband's checking-account records were available for months other than those listed above.
[3] We note that the wife's interpretation of what is or is not an appropriate item for consideration as a postminority educational expense has no bearing on this court's resolution of this issue.