THOMAS, Judge.
Dawn Elizabeth Rodgers (“the wife”) and Robert Joseph Rodgers (“the husband”) were married in December 1991. The parties have two children. The parties separated in May 2012, when the wife moved out of the marital residénce; however, the testimony at trial established that the parties had not had marital relations in quite some time before the wife left the marital residence.
The wife filed in the Madison Circuit- Court a complaint seeking a divorce in August 2014. The parties settled several aspects of the divorce, including dividing the husband’s various retirement and/or investment accounts, the parties’ several automobiles, and their personal property; At the trial, which was held in April 2015, the trial court considered, among other things, the issues of custody, child support, periodic alimony, and the division of the marital residence. On July 1, 2015, the trial court entered a judgment of divorce, which, among other things, incorporated the parties’ settlement agreement, awarded the parties joint custody of the children, ordered the husband to pay $1,418 per month in child support, ordered the marital residence to be sold and the proceeds, after certain deductions, including an award to the husband of an amount equal to half of the 2015 income-tax refund procured by the wife, to be divided equally. The judgment did not order the hus *1093 band to pay the wife alimony, reserve the issue of periodic alimony, or require the husband to purchase life insurance naming the wife as beneficiary. The wife filed a postjudgment motion, arguing several issues; the trial court amended the judgment to order the husband to secure life insurance naming the wife as beneficiary and reserved the issue of periodic, alimony but left all other aspects of the July 1, 2015, judgment unchanged. The wife, has appealed the judgment, arguing that the trial court erred by not awarding her periodic alimony.
“Under Alabama law, periodic alimony consists of regular installment payments made from one spouse to anpther to enable the recipient spouse, to the extent possible, to maintain his or her standard of living as it existed during the marriage, i.e., the ‘economic status quo.’ Orr v. Orr, 374 So.2d 895, 897 (Ala.Civ.App.1979). A divorcing spouse is not automatically entitled to periodic alimony, Beckwith v. Beckwith, 475 So.2d 575, 577 (Ala.Civ.App.1985) (holding that periodic alimony is not mandatory), but the decision whether to award periodic alimony rests in the sound judicial discretion of the trial court. Bush v. Bush, 784 So.2d 299, 300 (Ala.Civ.App.2000).
“In exercising its discretion, the trial court is guided by equitable considerations. See Killingsworth v. Killingsworth, 925 So.2d 977, 983 (Ala.Civ.App.2005). This court and our supreme court have enumerated the many factors trial courts must consider when weighing the propriety of an award of periodic alimony, Edwards v. Edwards, 26 So.3d 1254, 1259 (Ala.Civ.App.2009), which include: the length of the marriage, Stone v. Stone, 26 So.3d 1232, 1236 (Ala.Civ. App.2009); the standard of living to which the parties became accustomed during the marriage, Washington v. Washington, 24 So.3d 1126, 1135-36 (Ala.Civ.App.2009); the relative fault of the parties for the breakdown of the marriage. Lackey v. Lackey, 18 So.3d 393, 401 (Ala.Civ.App.2009); the age and health of the parties, Ex parte Elliott, 782 So.2d 308, 311 (Ala.2000); and the future employment prospects of the parties, Baggett v. Baggett, 855 So.2d 556, 559 (Ala.Civ.App.2003). In weighing those factors, a trial court essentially determines whether the petitioning spouse has demonstrated a need for continuing monetary support to sustain the former, marital Standard of living that the responding spouse can and, under the circumstances, should meet. See Gates v. Gates, 830 So.2d 746, 749-50 (Ala.Civ.App.2002); Hewitt v. Hewitt, 637 So.2d 1382, 1384 (Ala.Civ.App.1994) (‘The failure to award alimony, although discretionary, is arbitrary and capricious when the needs of the wife are shown to merit an award and the husband has the ability to pay.’).
“A petitioning spouse proves a need for periodic alimony by showing that without such financial support he or she will be unable to maintain the.parties’ former marital lifestyle. See Pickett v. Pickett, 723 So.2d 71, 74 (Ala.Civ.App.1998) (Thompson, J., with one judge concurring and two judges concurring in the result). As a necessary condition to an award of periodic alimony, a petitioning spouse should first establish the standard and mode of living of the parties during the marriage and the. nature .of the financial costs to the parties of maintaining that station in life. See, e.g., Miller v. Miller, 695 So.2d 1192, 1194 (Ala.Civ.App.1997); and Austin v. Austin, 678 So.2d 1129, 1131 (Ala.Civ.App.1996). The petitioning spouse should then establish his or her inability to achieve , that same standard of living *1094 through the use of his or her own individual assets, including his or her own séparate estate, the marital property received as part of any settlement or property division, and .his or her own wage-earning capacity, see Miller v. Miller, supra, with the last factor taking into account the age, health, education, and work experience of • the petitioning spouse as well as prevailing economic conditions, see DeShazo v. DeShazo, 582 So.2d 564, 565 (Ala.Civ.App.1991), and any rehabilitative alimony or other benefits that will assist the petitioning spouse in obtaining and maintaining gainful employment. See Treusdell v. Treusdell, 671 So.2d 699, 704 (Ala.Civ.App.1995). If the use of his or her assets and wage-earning capacity allows the petitioning spouse to routinely meet only part of the financial costs associated with maintaining the parties’ former marital standard of living, the petitioning. spouse has proven a need for additional support and maintenance that is measured by that shortfall. See Scott v. Scott, 460 So.2d 1331, 1332 (Ala.Civ.App.1984).
“Once the financial need of the petitioning spouse is established, the trial court should consider the ability of the responding spouse to meet that need. See Herboso v. Herboso, 881 So.2d 454, 458 (Ala.Civ.App.2003). The ability to pay may be proven by showing that the responding spouse has a sufficient separate estate, following the division of the marital property, see § 30-2-51(a), Ala. Code 1975, and/or sufficient earning capacity to consistently provide the petitioning spouse with the necessary funds to enable him or her to maintain the parties’ former marital standard of living. Herboso, supra. In considering the responding spouse’s ability to pay, the trial court should take into account all the financial obligations of the responding spouse, including those obligations created by the divorce judgment. See O’Neal v. O’Neal, 678 So.2d 161, 164 (Ala.Civ.App.1996). The trial court should also consider the impact an award of periodic alimony will have on the financial condition of the responding spouse and his or her ability to maintain the parties’ former marital lifestyle for himself or herself, Id. A responding spouse obviously has the ability to pay if the responding ■ spouse can satisfy the entirety of the petitioning spouse’s needs without any undue economic hardship. See, e.g., MacKenzie v. MacKenzie, 486 So.2d 1289, 1292 (Ala.Civ.App.1986). In most cases, however, simply due to the fact that, after separation, former spouses rarely can live as well and as cheaply as they did together, Gates, 830 So.2d at 750, a trial court will find that the responding spouse cannot fully meet the financial needs of the petitioning spouse. Walls v. Walls, 860 So.2d 352, 358 (Ala.Civ.App.2003). In those cases, the trial court should endeavor to determine the amount the responding spouse can fairly pay on a consistent basis. See Rubert v. Rubert, 709 So.2d 1283, 1285 (Ala.Civ.App.1998).
“After being satisfied that the petitioning spouse has a need for periodic alimony ánd that the responding spouse has some ability to meet that need, the trial court should consider the equities of the case. The length of the marriage does not determine the right to, or amount of, periodic alimony. Hatley v. Hatley, 51 So.3d 1031, 1035 (Ala.Civ.App.2010). However, the longer the parties have maintained certain living and financial arrangements, the more fair it will seem that those arrangements should be maintained beyond the divorce to the extent possible. See Edwards v. Edwards, 410 So.2d 91, 93 (Ala.Civ.App.1982). The trial court should also give *1095 due regard to the history of the marriage and the various economic and non-economic contributions and sacrifices made by the parties during the marriage. See Hanna v. Hanna, 688 So.2d 887, 891 (Ala.Civ.App.1997). In light.of those factors, the trial court should endeavor to avoid leaving the parties in an unconscionably disparate financial position, Jones v. Jones, 596 So.2d 949, 952 (Ala.Civ.App.1992). However, the trial court can consider whether the marriage, and its attendant standard of living, ended due to the greater fault of one of the parties, and, if so, the trial court can adjust the award accordingly. Yohey v. Yohey, 890 So.2d 160, 164-65 (Ala.Civ.App.2004). Lastly, 'the trial court should consider any and all other circumstances bearing on the fairness of its decision. See Ashbee v. Ashbee, 431 So.2d 1312, 1313-14 (Ala.Civ.App.1983).
“The determination of whether the petitioning spouse has a need for periodic alimony, of whether the responding spouse has the ability to pay periodic alimony, and of whether equitable principles require adjustments to periodic alimony are all questions of fact for the trial coprt, Lawrence v. Lawrence, 455 So.2d 45, 46 (Ala.Civ.App.1984), with the last issue lying particularly within the discretion of the trial court; See Nolen v. Nolen, 398 So.2d 712, 713-14 (Ala.Civ.App.1981). On appeal from ore tenus proceedings, this court presumes that the trial court properly found the facts necessary to support its judgment and prudently exercised its discretion. G.G. v. R.S.G., 668 So.2d 828, 830 (Ala.Civ.App.1995). That presumption may be overcome by a showing from the appellant that substantial evidence does not support those findings of fact, see § 12-21-12(a), Ala.Code 1975, or that the trial court otherwise acted arbitrarily, unjustly, or in contravention of the law. Dees v. Dees, 390 So.2d 1060, 1064 (Ala.Civ.App.1980).”
Shewbart v. Shewbart, 64 So.3d 1080, 1087-89 (Ala.Civ.App.2010).
The record reflects the following relevant facts. The parties married when both were attending college. The husband, completed his degree in electrical engineering, but the wife did not complete her accounting degree and instead dropped out of college, and worked. The wife testified that she had bagged groceries and had been a stocker at a military commissary and that she had worked at Qualitest Pharmaceuticals in the aecounts-receivable department, where she had “handled re-, bate programs.” She never returned to college to complete her accounting degree, and, between 1998, when the parties’ first' child was born, and 2006, the wife was a stay-at-home mother.
At the time of the trial, the wife, who was then 45 years old, was employed by the “morale, welfare and recreation department” at Redstone Arsenal. She explained that she worked at various fitness centers as an attendant and also taught certain fitness classes. Her gross income, as reflected on the child-support guidelines form contained in the record, is $1,941.16. She testified that her take-home pay was usually, between $1,300 and $1,400 per month.
The wife testified that she has an extra lumbar vertebra in her spine and that surgery was indicated for that condition. However; she said that she had not opted for surgery because she could not teach fitness classes if she had the surgery and would not be able to earn an income if she was unable to teach those classes. .The wife also testified that she had a bulging, but not yet herniated, disk in her back and that she was about to undergo rotator-cuff repair surgery in the weeks after the trial. *1096 In addition, the .wife explained that she suffered from low cortisol levels, which, she said, could cause a heart attack. However, although the wife testified that stress could cause her to need to seek treatment for low cortisol levels, she admitted that she had not had the need to seek such treatment in over a year before trial.
The husband testified that he has an uhdergraduate-level degree in electrical engineering. He is employed by the Department of the Army as a general engineer, and his yearly gross salary is $110,275. The husband is also on active duty in the Alabama Army National Guard; his yearly base salary for that employment is $18,038.79.[1] The husband’s employer is paying for his attendance at a master’s degree program. The husband testified that his gross monthly income is $10,692.81; however, ‘the child-supporfc-guidelines form contained in the record reflects that the husband’s, gross monthly income is $10,829.50.
■ During the parties’ lengthy separation, the husband paid the wife $1,400 per month in- child support. He also assisted her by paying $500 per month toward her rent. . However, in July 2014, shortly before the- wife filed her complaint for a divorce, the husband stopped paying the wife the $500.
The wife testified that she was unable to meet her expenses on her income. The wife also submitted an exhibit .outlining her expenses, which included, among other, things, her rent, the older child’s private-school tuition, food and restaurant expenses for her and the children, her cloth-, ing expenses, the children’s school-uniform and clothing expenses, and the costs' associated with the older child’s - participation as a cheerleader at her school. As the husband points out in his appellate brief, although the wife’s exhibit indicates that the wife’s ‘monthly expenses total $4,720.08, the total is actually $4,702.08. In addition, the wife’s expenses contain amounts assigned to the husband in the divorce judgment, including the private-school tuition for the older child, the cost of the older child’s required school uniforms, and all expenses associated with the older child’s cheerleading, which, combined, . equal $933.75 per month.[2] Thus, the wife’s monthly, expenses are reduced to $3,768.33 by virtue of the divorce judgment. The wife also included in her expenses the costs of having the children live primarily with her. Because she and the husband will alternate custody on a weekly basis under,the divorce judgment, some of the wife’s monthly food costs of $767 should be reduced because of the reduction in the time the children will be in her physical custody. However, the exact amount of that reduction is unknown. Her net income. of at least $1,300 combined with $1,418 per month in child support will provide the wife.with $2,718 in funds from which to meet the: expenses incurred by her and the children.
. The husband testified,that he could not afford to pay alimony. Two exhibits outlining the husband’s monthly expenses appear in the record, but the husband relied on the exhibit outlining the lesser amount *1097 of total expenses while -testifying during the presentation of his case. According to the husband,'his expenses total $6,987.42 per month and include, among other things, the mortgage payment on the marital residence, his $1,418 child-support obligation, and the older child’s private-school tuition of $725. According to the child-support-guidelines form contained in the record, the husband also pays a total of $866.45 per month in health-insurance costs; he testified, however, that he pays $440.46 per month for insurance. Adding the larger amount of insurance costs and the cost of uniforms and cheerleading costs (which combined to total $208.75) to his expenses increases the husband’s monthly expenses to $7,636.63.
However,.the record contains no evidence regarding the standard of living the parties enjoyed during the marriage.[3] As noted above,
“[a] petitioning spouse proves a need for periodic alimony by showing that without such financial support he or she will be unable to maintain the parties’ former marital lifestyle.... As a necessary condition .to an award of periodic alimony, a petitioning spouse should first establish the standard and mode of living of the parties during the marriage and the nature of the financial costs to the parties of maintaining that station in life."
Shewbart, 64 So.3d at 1087-88.
Although the disparate incomes of the parties is clear, the wife failed to present evidence regarding- the standard of living of the parties during their marriage. Because the wife failed to meet the necessary condition of proving the standard of living of the parties during the .marriage, we cannot hold the trial court in error for failing to award the wife periodic alimony. The judgment of the trial court divorcing the parties is therefore affirmed.
AFFIRMED.
PITTMAN and DONALDSON, JJ., concur.
MOORE, J., concurs specially.
THOMPSON, P.J., dissents, with writing.

. In 2014, the husband earned $19,954.11 from his employment by the Alabama Army National Guard. Hetestified that he had performed an extra four days of temporary duty in 2014 and that additional duty had increased his pay by approximately $1,000 that yéar. He testified that he had not performed additional duty in 2015.

. The wife testified that both children wore required school uniforms. Her monthly expenses included $157,49 as reflecting the cost of those uniforms, To compute the husband's estimated uniform expense for the older child, we divided.the wife’s monthly expense in half.

. In fact, although both of the children attended Catholic school.for .part of the marriage, most of the testimony adduced at trial indicates that the husband was quite frugal - during the marriage. The wife complained that the husband had never bought her an engagement ring and that they had not taken a honeymoon. The husband admitted that the wife’s spending had caused issues during the marriage; he complained that she often overdrew her account and would not tell him when she needed money. The wife stated that, at times, she had not had the funds in her account to pay bills for which she had been responsible during- the marriage. The husband said that he had shopped at thrift stores for his clothing as opposed to the department stores the wife favored, He also testified that, after the separation, he had not had cable television. ■