DONALDSON, Judge.
James S. Rieger (“the husband”) appeals from a judgment of the Morgan Circuit Court (“the trial court”) divorcing him from Katrina E. Rieger (“the wife”). Among other allegations of error, the husband contends that the financial obligations imposed upon him pursuant to the judgment exceed his ability to pay. For the reasons discussed herein, we affirm the judgment in part, reverse the judgment in part, and remand this case to the trial court for proceedings consistent with this opinion.

Facts and Procedural History

The husband and the wife married in 1997. The marriage produced 1 child who was 14 years old at the time the judgment of divorce was entered. The wife filed a complaint for a divorce on June 21, 2011, and the husband filed an answer and counterclaim for a divorce on July 14, 2011. The case was heard ore tenus before the trial court on June 25, 2012.
At the time of trial, the husband was 51 years old and the wife was 47 years old. Testimony was presented at trial regarding the wife’s history of extensive health problems. Neither party presented any evidence regarding the status of the husband’s health.
The husband was the primary wage earner throughout the marriage. At the time of trial, the husband owned two businesses. He testified that one of those businesses was “idle” and had not generated income during the marriage.[1] The husband’s other business, JSR Insurance Services, LLC was the primary source of income generated during the marriage.
Both parties testified that, throughout the marriage, the husband had paid the family’s expenses, such as the mortgages on their two jointly owned properties, utility bills, telephone bills, and storage-unit payments. The husband also paid automobile-, life-, and health-insurance premiums for the parties and for their child. During the parties’ separation and the divorce proceedings, the husband continued to pay those marital expenses as well as his personal expenses, which included rent for his apartment, groceries, and other necessary expenditures. Both parties testified that the husband was able to satisfy those financial obligations during the marriage and throughout the parties’ separation without having to borrow money.
The husband testified that the wife had been capable of working outside the home during the marriage and that he had encouraged her to work. The wife testified that, in preparation for trial, she had created a detailed financial statement regarding the husband’s finances, which involved obtaining financial data and entering it into a computer program over an extended period. She testified that she would not, however, be able to do that type of activity on a daily basis. The wife testified that she was “capable of doing anything to try to keep [the parties’] daughter in the same lifestyle that she had.” However, the wife testified that she was “not able to work outside of the home” and that she could not lift anything that weighed more than five pounds. She denied that the husband had ever encouraged her to work outside the home.
In 1999, the Social Security Administration determined the wife to be 100% dis *427 abled, and she receives a monthly benefit as a result of that determination of $1,815. She also receives a $900 monthly benefit on behalf of the parties’ minor child. Those monthly benefits total $2,715. According to the CS^2 “Child-Support Guidelines” form prepared by the trial court, the wife’s individual Social Security benefit accounts for approximately 11% of the parties’ adjusted gross monthly income; the husband’s income accounts for the remaining 89%. The wife testified that her Social Security benefit was used at her discretion “almost like a [petty-]cash fund” and that she had never made any financial contribution toward the family’s expenses.
Both parties testified that the husband had done the majority of the household cooking and cleaning throughout the marriage. The husband testified that he was primarily responsible for taking the daughter to and from school and other activities. Both parties testified that the wife had not contributed to the housekeeping responsibilities and that she often plays computer games and talks on the telephone for hours at a time.
During the marriage, the parties jointly owned two parcels of real property: the marital residence and a parcel of unimproved land. The record shows that, at the time of trial, the marital residence had a fair-market value of $195,000 with a mortgage indebtedness of $184,000. The monthly mortgage payment on the marital residence was $1,475. The unimproved property consists of 125.5 acres. The husband testified that he had listed the unimproved property for sale at $3,000 per acre and that that price was “roughly 20 or 25% below market value.” He testified that the parties owed $810,000 on the unimproved property and that the monthly mortgage payment on that property was $2,200.
The record further reveals that the parties had received a notification that a “balloon loan” used to finance the purchase of the unimproved property was scheduled to mature two days after trial. The notification stated that if the loan was not satisfied by the maturity date, the mortgagee would initiate foreclosure proceedings. The husband testified that he was actively seeking refinancing options for the loan.
Both the husband and the wife testified that the family had taken multiple vacations over the years, including one to Europe in 2009, which the husband testified cost $40,000. The husband occasionally spent up to $1,000 per month on clothes, and the wife apparently spent a similar amount, as reflected in a “standard-of-living budget” she submitted at trial. The parties also employed a housekeeper.
The wife testified that there had never been any financial restrictions placed on her throughout the marriage and that the husband had never compelled her to follow a budget. According to the budget she submitted at trial, the wife would need $15,760 per month in order to maintain the standard of living that she had enjoyed during the marriage, $4,000 of which accounted for “expenses” for the parties’ minor child. The wife testified that in preparing her budget for trial, she had relied on the husband’s representations to her regarding the amount of household expenses.
On July 11, 2012, the trial court entered a final judgment divorcing the parties. The trial court’s judgment ordered the husband to maintain and “pay and be responsible for all premiums” for “major medical and hospitalization (and dental if available) insurance coverage for the parties’ child, which coverage shall be maintained for so long as such group insurer allows.” The trial court ordered the parties to pay equally toward medical ex *428 penses for the minor child that were not covered by health insurance. The court ordered the husband and the minor child to attend joint counseling and required the husband to pay the cost of the counseling. The trial court also ordered the husband to maintain a life-insurance policy in the amount of “not less than $500,000 with the [wife] being named as beneficiary” for the use and benefit of the parties’ minor child for as long as child support and/or alimony are payable. The judgment awarded the marital residence to the wife, and it required the husband to sign a deed conveying his interest in that property to the wife. The husband was ordered to pay the $1,475 monthly mortgage payment on the marital residence. The judgment awarded to the wife the furnishings, household goods, and contents of the residence. The husband was awarded the unimproved property, and the wife was required to sign a deed conveying her interest in that property to the husband. The husband was ordered to pay the $2,200 monthly mortgage payment on that property as well.
The judgment awarded the wife $6,500 per month in periodic alimony “until such time as the [wife] dies, remarries or cohabits with a member of the opposite sex to whom she is not married as provided by statute, whichever event shall occur first.” The judgment awarded each party “all right, title and interest in and to any financial accounts” held in his or her individual name, including retirement or pension accounts. Each party was ordered to “pay and be responsible for those debts and credit card accounts in their individual names.”
The judgment ordered the husband to pay $1,206 per month in child support as calculated “pursuant to Rule 32, [Ala. R. Jud. Admin.].” In calculating the husband’s child-support obligation, the trial court specifically adjudicated the husband’s monthly gross income to be $15,052 and also determined that “this amount represents the [husband’s] average [monthly] net income for the years 2010-2012.”
Both parties filed postjudgment motions to alter, amend, or vacate the final judgment pursuant to Rule 59, Ala. R. Civ. P. The husband alleged that the amount of alimony awarded to the wife was “unjust, inequitable, and financially crippling.” He contended that the trial court had specifically found in the judgment that his monthly gross income was $15,052; that federal income tax on that income was 20% and self-employment tax was 8%, which left him with an average monthly net income of $10,838; and that his court-ordered financial obligations, which totaled $12,211, exceeded his monthly net income “rendering it impossible for him to maintain the court ordered payments.” The husband also requested that the court amend the judgment to delete the requirement that he pay the mortgage on the marital residence.
After a hearing on the parties’ motions, the trial court entered an amended order on August 30, 2012, deleting the requirement that the husband pay the $1,475 monthly mortgage on the marital residence and replacing it with a requirement that the wife pay and be responsible for that mortgage. The amended order, however, increased the periodic-alimony award to the wife by $1,475, which raised the husband’s alimony obligation from $6,500 to $7,975 per month. The trial court denied all other requests for relief. The husband filed a timely notice of appeal on September 24, 2012.

Standard of Review

Our standard of review of a judgment determining an award of alimony and dividing marital property is well settled:
*429 “When the trial court fashions a property division following the presentation of ore tenus evidence, its judgment as to that evidence is presumed correct on appeal and will not be reversed absent a showing that the trial court exceeded its discretion or that its decision is plainly and palpably wrong. Roberts v. Roberts, 802 So.2d 230, 235 (Ala.Civ.App.2001); Parrish v. Parrish, 617 So.2d 1036, 1038 (Ala.Civ.App.1993); and Hall v. Mazzone, 486 So.2d 408, 410 (Ala.1986). A property division is required to be equitable, not equal, and a determination of what is equitable rests within the broad discretion of the trial court. Parrish, 617 So.2d at 1038. In fashioning a property division and an award of alimony, the trial court must consider factors such as the earning capacities of the parties; their future prospects; their ages, health, and station in life; the length of the parties’ marriage; and the source, value, and type of marital property. Robinson v. Robinson, 795 So.2d 729, 734 (Ala.Civ.App.2001). ‘[W]e note that there is no rigid standard or mathematical formula on which a trial court must base its determination of alimony and the division of marital assets.’ Yohey v. Yohey, 890 So.2d 160, 164 (Ala.Civ.App.2004).”
Stone v. Stone, 26 So.3d 1232, 1236 (Ala.Civ.App.2009).

Discussion

On appeal, the husband alleges that the judgment must be reversed because (1) the trial court erred by deciding to award the wife periodic alimony in any amount; (2) the trial court erred by using the husband’s average monthly gross income rather than his average monthly net income to calculate his financial obligations; and/or (3) the trial court exceeded its discretion with respect to the amount of the periodic-alimony award.
The husband first argues that the trial court erred in awarding any periodic alimony to the wife because, he says, the wife failed to present sufficient evidence from which such an award could be made and, therefore, failed to meet her burden of proof at trial. Initially, we note that there is nothing in the record establishing that the husband raised this argument in his Rule 59 motion to alter, amend, or vacate, or at the hearing on that motion. In New Properties, L.L.C. v. Stewart, 905 So.2d 797, 801-02 (Ala.2004), the supreme court held that, “in a nonjury case in which the trial court makes no specific findings of fact, a party must move for a new trial or otherwise properly raise before the trial court the question relating to the sufficiency or weight of the evidence in order to preserve that question for appellate review.” ■ The trial court made no specific findings of fact in the divorce judgment, and the husband did not raise this issue in his postjudgment motion; therefore, the issue was not properly preserved for appellate review.
Moreover, even if the husband had properly preserved this issue, we note that the evidence was sufficient to sustain an award of periodic alimony. This court has held:
“A divorcing spouse is not automatically entitled to periodic alimony, Beckwith v. Beckwith, 475 So.2d 575, 577 (Ala.Civ.App.1985) (holding that periodic alimony is not mandatory), but the decision whether to award periodic alimony rests in the sound judicial discretion of the trial court. Bush v. Bush, 784 So.2d 299, 300 (Ala.Civ.App.2000).
“In exercising its discretion, the trial court is guided by equitable considerations. See Killingsworth v. Killingsworth, 925 So.2d 977, 983 (Ala.Civ.App.2005). This court and our supreme *430 court have enumerated the many factors trial courts must consider when weighing the propriety of an award of periodic alimony, Edwards v. Edwards, 26 So.3d 1254, 1259 (Ala.Civ.App.2009), which include: the length of the marriage, Stone v. Stone, 26 So.3d 1232, 1236 (Ala.Civ.App.2009); the standard of living to which the parties became accustomed during the marriage, Washington v. Washington, 24 So.3d 1126, 1135-36 (Ala.Civ.App.2009); the relative fault of the parties for the breakdown of the marriage, Lackey v. Lackey, 18 So.3d 393, 401 (Ala.Civ.App.2009); the age and health of the parties, Ex parte Elliott, 782 So.2d 308, 311 (Ala.2000); and the future employment prospects of the parties, Baggett v. Baggett, 855 So.2d 556, 559 (Ala.Civ.App.2003). In weighing those factors, a trial court essentially determines whether the petitioning spouse has demonstrated a need for continuing monetary support to sustain the former, marital standard of living that the responding spouse can and, under the circumstances, should meet. See Gates v. Gates, 830 So.2d 746, 749-50 (Ala.Civ.App.2002); Hewitt v. Hewitt, 637 So.2d 1382, 1384 (Ala.Civ.App.1994) (‘The failure to award alimony, although discretionary, is arbitrary and capricious when the needs of the wife are shown to merit an award and the husband has the ability to pay.’).
“A petitioning spouse proves a need for periodic alimony by showing that without such financial support he or she will be unable to maintain the parties’ former marital lifestyle. See Pickett v. Pickett, 723 So.2d 71, 74 (Ala.Civ.App.1998) (Thompson, J., with one judge concurring and two judges concurring in the result). As a necessary condition to an award of periodic alimony, a petitioning spouse should first establish the standard and mode of living of the parties during the marriage and the nature of the financial costs to the parties of maintaining that station in life. See, e.g., Miller v. Miller, 695 So.2d 1192, 1194 (Ala.Civ.App.1997); and Austin v. Austin, 678 So.2d 1129, 1131 (Ala.Civ.App.1996). The petitioning spouse should then establish his or her inability to achieve that same standard of living through the use of his or her own individual assets, including his or her own separate estate, the marital property received as part of any settlement or property division, and his or her own wage-earning capacity, see Miller v. Miller, supra, with the last factor taking into account the age, health, education, and work experience of the petitioning spouse as well as prevailing economic conditions, see DeShazo v. DeShazo, 582 So.2d 564, 565 (Ala.Civ.App.1991), and any rehabilitative alimony or other benefits that will assist the petitioning spouse in obtaining and maintaining gainful employment. See Treusdell v. Treusdell, 671 So.2d 699, 704 (Ala.Civ.App.1995). If the use of his or her assets and wage-earning capacity allows the petitioning spouse to routinely meet only part of the financial costs associated with maintaining the parties’ former marital standard of living, the petitioning spouse has proven a need for additional support and maintenance that is measured by that shortfall. See Scott v. Scott, 460 So.2d 1331,1332 (Ala.Civ.App.1984).”
Shewbart v. Shewbart, 64 So.3d 1080, 1087-88 (Ala.Civ.App.2010). The husband argues that the wife “failed to prove her standard of living during the marriage.” In support of this allegation, the husband argues that the wife misrepresented amounts in the budget she submitted at trial and that that budget did not reflect the lifestyle enjoyed by the parties during the marriage. “[W]hen the trial court has *431 been presented evidence in a divorce case ore tenus, its judgment will be presumed to be correct and will not be set aside by this court unless it is plainly and palpably wrong or unjust.” Brannon v. Brannon, 477 So.2d 445, 446 (Ala.Civ.App.1985). What type of lifestyle the parties enjoyed during the marriage and whether the wife misrepresented her expenses in her budget were issues of fact to be determined by the trial court under the ore tenus standard. In this case, the trial court heard testimony from both parties regarding “standard and mode of living of the parties during the marriage and the nature of the financial costs to the parties of maintaining that station in life” as well as “the age, health, education, and work experience” of the wife. Shewbart, 64 So.3d at 1088. There is no dispute that the wife did not work during the marriage and that she has experienced serious health problems. Further, the husband does not contend that he is unable to satisfy a reasonable alimony award. The record contains sufficient evidence to support the implicit finding in the judgment that the wife proved “a need for periodic alimony by showing that without financial support ... she will be unable to maintain the parties’ former marital lifestyle.” Id. at 1087. For the foregoing reasons, the judgment, insofar as it determined that the wife was entitled to some amount of periodic alimony, is affirmed.
The husband next contends that the trial court should have used his average monthly net income rather than his average monthly gross income to calculate his financial obligations, including the periodic-alimony award of $7,975 to the wife. In fashioning an award of periodic alimony, the trial court, after determining that the petitioning spouse has established a need for financial support, must determine whether the responding spouse has the ability to pay. See Shewbart, 64 So.3d at 1088. A responding spouse “ ‘obviously has the ability to pay if the responding spouse can satisfy the entirety of the petitioning spouse’s needs without any undue economic hardship.’” Long v. Long, 109 So.3d 633, 651 (Ala.Civ.App.2012) (quoting Shewbart, 64 So.3d at 1088). “ ‘[T]he trial court should endeavor to determine the amount the responding spouse can fairly pay on a consistent basis.’” Long, 109 So.3d at 651 (quoting Shewbart, 64 So.3d at 1088).
For purposes of determining a spouse’s ability to pay, and for purposes of calculating an appropriate amount of periodic alimony, the trial court should ordinarily use the spouse’s net income as the starting point for these evaluations. See Ex parte Jackson, 567 So.2d 867, 868 (Ala.1990) (evaluating the responding spouse’s ability to pay based on the responding spouse’s net income); see also J.D.A. v. A.B.A., 142 So.3d 603, 614 (Ala.Civ.App.2013) (“Because ... the trial court implicitly relied ... on the wife’s erroneous estimation of the husband’s net monthly income, we reverse the periodic-alimony award and remand the cause to the circuit court to reconsider the alimony award.”); Kiel v. Kiel, 51 So.3d 1058, 1068 (Ala.Civ.App.2010) (using the responding spouse’s net income as the basis for evaluating the financial impact that the alimony payment would have); Wheeles v. Wheeles, 770 So.2d 635, 637 (Ala.Civ.App.2000) (reversing the trial court’s judgment that required the husband to pay $1,150 in alimony because the judgment “eripple[d] him financially,” leaving him with $80 per month after his living expenses and court-ordered financial obligations, including periodic alimony, were deducted from “[h]is net income”); and Rubert v. Rubert, 709 So.2d 1283, 1285 (Ala.Civ.App.1998) (holding that the trial court exceeded its discretion because its judgment created financial *432 obligations for the husband that, after deducting the wife’s periodic-alimony award from the husband’s net income, exceeded his remaining income). A judgment that imposes financial obligations on a responding spouse that exceeds his or her ability tp satisfy those obligations creates an undue economic hardship and must generally be reversed.
In this case, the court stated in the judgment that, for purposes of determining the husband’s child-support obligation, the trial court had calculated the husband’s income “pursuant to Rule 32, [Ala. R. Jud. Admin.,]” and that it had determined that “the [husbandj’s gross monthly income [was] $15,052.00.”[2] However, the judgment then states that this amount also represented the husband’s average net income,[3] The record does not show that the wife contested $15,052 as the husband’s average monthly gross income either in her Rule 59 motion or at the hearing on the parties’ postjudgment motions.
Because the trial court made a finding that under Rule 32 the husband’s monthly gross income was $15,052, that figure cannot be both the husband’s gross income and his net income.
The husband argues that the trial court exceeded its discretion by awarding the wife $7,985 in monthly periodic alimony because, he alleges, the trial court’s award was excessive or inequitable. The purpose of periodic alimony is “to support the former dependent spouse and to enable that spouse, to the extent possible, to maintain the status that the parties had enjoyed during the marriage until that spouse is self-supporting or maintaining a lifestyle or status similar to the one enjoyed during the marriage.” O’Neal v. O’Neal, 678 So.2d 161, 164 (Ala.Civ.App.1996); see also Shewbart v. Shewbart, 19 So.3d 223, 231 (Ala.Civ.App.2009) (“The purpose of alimony is ‘to preserve, insofar as possible, the economic status quo of the parties as it existed during the marriage ... ’ ” (quoting Dees v. Dees, 390 So.2d 1060, 1064 (Ala.Civ.App.1980)) (emphasis added)). “The phrase ... ‘to the extent possible’ recognizes that both former spouses will have to live on substantially less income” after a divorce. Gates v. Gates, 830 So.2d 746, 750 (Ala.Civ.App.2002). This court has addressed the standard to be applied to such determinations:
“Once the financial need of the petitioning spouse is established, the trial court should consider the ability of the responding spouse to meet that need. See Herboso v. Herboso, 881 So.2d 454, 458 (Ala.Civ.App.2003). The ability to pay may be proven by showing that the responding spouse has a sufficient separate estate, following the division of the marital property, see § 30-2-51 (a), Ala.’ Code 1975, and/or sufficient earning capacity to consistently provide the petitioning spouse with the necessary funds to enable him or her to maintain the parties’ former marital standard of living. Herboso, supra. In considering the responding spouse’s ability to pay, the trial court should take into account all the financial obligations of the responding spouse, including those obligations created by the divorce judgment. See O’Neal v. O’Neal, 678 So.2d 161, 164 (Ala.Civ.App.1996). The trial court should also consider the impact an award of periodic alimony will have on the financial condition of the responding *433 spouse and his or her ability to maintain the parties’ former marital lifestyle for himself or herself. Id. A responding spouse obviously has the ability to pay if the responding spouse can satisfy the entirety of the petitioning spouse’s needs without any undue economic hardship. See, e.g., MacKenzie v. Mac-Kenzie, 486 So.2d 1289, 1292 (Ala.Civ. App.1986). In most cases, however, simply due to the fact that, after separation, former spouses rarely can live as well and as cheaply as they did together, Gates[ v. Gates ], 830 So.2d [746] at 750 [(Ala.Civ.App.2002)], a trial court will find that the responding spouse cannot fully meet the financial needs of the petitioning spouse. Walls v. Walls, 860 So.2d 352, 358 (Ala.Civ.App.2003). In those cases, the trial court should endeavor to determine the amount the responding spouse can fairly pay on a consistent basis. See Rubert v. Rubert, 709 So.2d 1283, 1285 (Ala.Civ.App.1998).
“After being satisfied that the petitioning spouse has a need for periodic alimony and that the responding spouse has some ability to meet that need, the trial court should consider the equities of the ease. The length of the marriage does not determine the right to, or amount of, periodic alimony. Hatley v. Hatley, 51 So.3d 1031, 1035 (Ala.Civ.App.2010). However, the longer the parties have maintained certain living and financial arrangements, the more fair it will seem that those arrangements should be maintained beyond the divorce to the extent possible. See Edwards v. Edwards, 410 So.2d 91, 93 (Ala.Civ.App.1982). The trial court should also give due regard to the history of the marriage and the various economic and non-economic contributions and sacrifices made by the parties during the marriage. See Hanna v. Hanna, 688 So.2d 887, 891 (Ala.Civ.App.1997). In light of those factors, the trial court should endeavor to avoid leaving the parties in an unconscionably disparate financial position. Jones v. Jones, 596 So.2d 949, 952 (Ala.Civ.App.1992). However, the trial court can consider whether the marriage, and its attendant standard of living, ended due to the greater fault of one of the parties, and, if so, the trial court can adjust the award accordingly. Yohey v. Yohey, 890 So.2d 160, 164-65 (Ala.Civ.App.2004). Lastly, the trial court should consider any and all other circumstances bearing on the fairness of its decision. See Ashbee v. Ashbee, 431 So.2d 1312, 1313-14 (Ala.Civ.App.1983).
“The determination of whether the petitioning spouse has a need for periodic alimony, of whether the responding spouse has the ability to pay periodic alimony, and of whether equitable principles require adjustments to periodic alimony are all questions of fact for the trial court, Lawrence v. Lawrence, 455 So.2d 45, 46 (Ala.Civ.App.1984), with the last issue lying particularly within the discretion of the trial court. See Nolen v. Nolen, 398 So.2d 712, 713-14 (Ala.Civ.App.1981). On appeal from ore tenus proceedings, this court presumes that the trial court properly found the facts necessary to support its judgment and prudently exercised its discretion. G.G. v. R.S.G., 668 So.2d 828, 830 (Ala.Civ.App.1995). That presumption may be overcome by a showing from the appellant that substantial evidence does not support those findings of fact, see § 12-21-12(a), Ala.Code 1975, or that the trial court otherwise acted arbitrarily, unjustly, or in contravention of the law. Dees v. Dees, 390 So.2d 1060, 1064 (Ala.Civ.App.1980).”
Shewbart, 64 So.3d at 1088-89.
The trial court should consider the impact that the periodic-alimony award *434 would have on the financial condition of the responding spouse as well as the impact that the award would have on that spouse’s ability to maintain the parties’ former marital lifestyle for himself or herself. Long, 109 So.3d at 651; O’Neal, 678 So.2d at 164. The trial court must consider the needs of both parties and their respective abilities to meet those needs, with the goal of fashioning an order providing that the parties should be living as closely as possible to the standard at which they lived during the marriage, while recognizing the • limitations on reaching that goal with any increased living expenses following a divorce. Shewbart, 64 So.3d at 1088. Although alimony awards and property divisions are not required to be equal, they must be equitable, and a court order that enables one spouse to live luxuriously by forcing the other into poverty is not equitable. Daugherty v. Daugherty, 579 So.2d 1377, 1380 (Ala.Civ.App.1991) (The amount of alimony awarded to one spouse should not “cripple” the other spouse.).
Based on the determination contained within the judgment regarding the husband’s monthly gross income, the record shows that the alimony award of nearly $7,975 a month, in addition to the husband’s other financial obligations created by the final judgment, is not sustainable. The trial court found that the husband’s average monthly gross income was $15,052, which would reasonably indicate that the husband’s average monthly net income is less than $15,052. The monthly financial obligations on the husband imposed by the judgment total $12,211, specifically a $7,975 alimony award; $2,200 monthly mortgage payment on the unimproved land; $1,206 in child support; $680 for health insurance; and $150 for counseling for the parties’ minor child. As such, the judgment imposed financial obligations upon the husband of over 82% of his monthly gross income, as that figure was determined elsewhere in the judgment, and without taking into consideration the husband’s living expenses.
Although we can make no determination as to the actual amount of the husband’s monthly net income, the record before us shows that the periodic-alimony award will not allow the husband to satisfy his financial obligations while simultaneously meeting his own personal expenses. Because the financial obligations created by the final judgment exceed the husband’s ability to pay, the judgment cannot be sustained. For these reasons, and because alimony and property division are matters that must be considered together, we reverse the trial court’s judgment insofar as it awards the wife $7,975 in monthly periodic alimony and divides the marital property and remand this case for the court to reconsider the alimony and property awards together. See Pate v. Pate, 849 So.2d 972, 976 (Ala.Civ.App.2002) (“The issues of property division and alimony are interrelated, and they must be considered together.”).
The parties’ requests for the award of attorney fees on appeal are denied.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.

. The husband testified that this business, Rock Solid Wealth Strategy, L.L.C., had had a Web site for four or five years but that the business itself was "just sitting there.”

. The trial court also listed $15,052 as the husband’s "Monthly Gross Income” and as his "Monthly Adjusted Gross Income" on the CS-42 form that the trial court prepared.

. The trial court said that it calculated the husband's income using tax returns from 2010 and 2011 and from a cash-flow report that the husband created for 2012.