DONALDSON, Judge.
*1124 This court's no-opinion order of affirmance issued on March 17, 2017, is withdrawn, and the following is substituted therefor. Ronald Meehan ("the husband") appeals from a judgment of the Baldwin Circuit Court ("the trial court") divorcing him from Felicia Meehan ("the wife"), awarding alimony, and dividing the parties' property. The wife cross-appeals, challenging the amount of the child-support award and the division of property. We affirm the judgment.
Facts and Procedural History
The husband and the wife met in Georgia in 1994 through their employment with a home-building company. In 1997, they became involved in a romantic relationship while the husband was still married to his second wife. On February 1, 2000, the parties' child, S.L.M. ("the child"), was born. In 2002, the husband divorced his second wife, and, in 2004, the parties began living together.
In 2006, the wife and the child moved from Georgia to Baldwin County in anticipation of the child's starting school. The husband remained in Georgia with the intent to relocate to Baldwin County within the next year. The wife and the child lived in a house on lot 7, one of two lots ("lot 7 and lot 8") that the husband owned on Fort Morgan Road. On August 5, 2006, the parties were ceremonially married. According to the husband's testimony, he was forced to continue his employment in Georgia because of the recent economic crisis, and the husband believed that he would be unable to find new employment at 60 years old in the home-building industry. As a result, the husband continued to live in Georgia and traveled to Baldwin County to visit the wife and the child on the weekends.
The child did not attend public school in Baldwin County, as the parties had planned, but attended different private schools in the area. From 2006 to 2011, the wife drove over 200 miles each day transporting the child from Fort Morgan to the child's school in Mobile. In 2011, the wife and the child moved to a house that the parties purchased in Daphne that was located closer to the child's school. The husband retired in May 2014 and began living full-time with the wife and the child in the house in Daphne.
On February 3, 2015, the husband filed a complaint for a divorce in the trial court. The wife filed an answer and a counterclaim for a divorce in which she asserted, among other things, that the parties had been common-law married since 2004. Throughout the course of the proceedings, each party filed numerous motions that were addressed by the trial court before the trial.
On March 17 and 18, 2016, the trial court held a trial. The husband was 67 years old and the wife was 50 years old at the time of the trial. At the beginning of the trial, the husband and the wife stipulated to a custodial and visitation arrangement wherein the wife would have sole physical custody of the child. The parties also agreed that two specified financial accounts would be used for the purpose of funding the child's private-high-school tuition and college tuition.
The husband testified that, when the wife and the child moved to Baldwin County, the parties planned on the husband's retiring and the wife's finding employment. The husband testified that the wife never sought employment and refused to work outside the home. The husband testified that his income dropped significantly when he retired. The husband had earned $231,328 in 2013, but, in 2014, his income was $65,487. The husband testified that, *1125 about six months after he retired, he and the wife had a discussion about her spending habits and the need for her to obtain employment but that the wife refused to seek employment and instead told the husband to find employment. The husband testified that, although she transported the child to and from school, the wife would not perform housework, including laundry and cleaning the house. The husband also testified that the parties had not shared a bed since 2007 or 2008.
The husband testified that, in July 2014, as part of his retirement planning, he created the Ronald Meehan Revocable Trust ("the trust") for the purpose of ensuring that all five of his children were taken care of after his death. The husband has four children from his previous marriages in addition to his child with the wife. The husband placed into the trust lot 7 and lot 8 and a financial account for his anticipated long-term-care expenses that the husband had accumulated before the parties' marriage. The long-term-care account had approximately $255,000 in it at the time of the trial. The husband testified that he had used approximately $50,000 from that account over the past year to pay taxes, insurance, and expenses for lot 7 and lot 8.
The husband testified that his monthly income was approximately $4,800, which consisted of a pension benefit, his Social Security benefit, and a Social Security benefit that he receives for the child until she reaches the age of 18.[1] The husband testified that he had not drawn any money from his retirement accounts since his retirement in May 2014 and that he wanted to wait as long as possible before drawing from his retirement accounts. The husband testified that he had a retirement account with an approximate balance of $337,000 and another retirement account with an approximate balance of $538,000. The husband testified that, when he begins to draw income from his retirement accounts, his monthly income will be between $5,000 and $10,000 per month. The husband testified that his monthly expenses ranged from $1,500 to $1,800. The husband testified that he could afford to pay alimony to the wife for a short period.
The wife described her relationship with the husband as "being in prison." The wife testified that, on average since 2004, the husband had deposited $10,000 per month in an account for the use of the wife and the child. The wife testified that the husband had always paid off credit-card account balances in full every month until June 2015. The wife testified that she and the husband had never had discussions about her obtaining employment and that he never restricted her spending.
The wife testified that she had earned her general equivalency diploma or GED. She testified that her last employment was from 1994 to 2004 when she worked for a home-building company and earned $65,000 annually. The wife testified that she had $43,000 in a retirement account from that employment. The wife testified that, over the past few months before trial, she had sought employment at four or five different places without success.
The wife testified that she would need at least $7,000 each month in alimony. She testified that her basic monthly expenses were $4,221 per month and that she needed an additional $2,321 for other expenses, which included gas, prescriptions, cell-phone expenses, vehicle maintenance, insurance, clothing, shoes, etc. When asked how much she would be willing to contribute to her monthly expenses, the wife replied: "Depends on when I get a job and how much I make."
*1126 On March 18, 2016, the trial court entered the following order: "MOTION FOR SUMMARY JUDGMENT PURSUANT TO RULE 56 filed by MEEHAN FELICIA ANN was set this date. Testimony concluded. Following testimony, order issued with Attorney R. Powell to prepare order." On March 31, 2016, the husband filed what he described as a motion to alter, amend, or vacate the trial court's March 18, 2016, order in which he challenged the sufficiency of the evidence.
On April 7, 2016, the trial court entered a final judgment. In the judgment, the trial court ordered, among other things:
"6. The husband shall pay to the wife $574/month in ongoing monthly child support until the child reaches the age of majority.... A copy of the completed Child Support Guidelines has been submitted herewith for the Court's record. Under no circumstances shall the payment of this child support be dischargeable in bankruptcy.
"7. The husband shall be responsible for payment of the child's health insurance premiums until she reaches the age of majority, or until she is no longer insurable pursuant to the policy provisions, whichever is longer.
"8. The husband shall be responsible for 100% of the child's non-covered medical expenses, including any deductibles therefor, until the child reaches majority. The wife shall provide the husband with written documentation for any non-covered medical expenses within thirty (30) days after the date of said medical service. The husband shall reimburse the wife 100% of said non-covered medical expense within thirty (30) days thereafter.
"9. The parties shall make every reasonable effort to communicate about medical expenses for the child, and whenever possible, a joint decision shall be reached by the parties regarding [the child's] medical treatment(s) ahead of time. In the event the parties cannot agree, the non-covered medical expense for that treatment shall be split 50/50 and reimbursement shall follow the same procedure set forth above.
"10. Based on the evidence provided at trial, the Court finds that the effective date of the parties' marriage is the same date as their ceremonial marriage, to-wit: August 6, 2006. The court does not find any credible evidence that a Common Law marriage existed prior to the date of the ceremonial marriage.
"11. The Court will accept the parties' stipulation that the T. Rowe Price College tuition account created and intended for [the child's] college tuition shall be maintained and utilized solely for any and all tuition, room, board, fees, books, or other college expenses until it is exhausted. In the event that [the child] receives scholarships, or that the funds in the said college tuition account are not exhausted upon [the child's] completion of college, any remaining monies shall be given to [the child].
"12. The Court will accept the parties' stipulation that the Wells Fargo account for UMS high school tuition account created and intended for [the child's] UMS high school tuition shall be maintained and utilized solely for any and all tuition, room, board, fees, books, or other high school expenses until it is exhausted, in the event that [the child] receives scholarships, or that the funds in the said high school tuition account are not exhausted upon [the child's] completion of high school, any remaining monies shall be utilized first for college expenses and, thereafter, if there are remaining funds, shall be given to [the child].
"13. The Court finds that the Daphne Home is jointly-owned property and should be immediately placed on the real *1127 estate market for sale. Once sold, the wife shall receive any and all proceeds after any indebtedness, reasonable real estate commissions and closing costs are paid. Until the Daphne home is sold, the wife shall be 100% responsible for the payment of the home's mortgage and/or any other financial obligations relating to the said home.
"14. The Court finds that Lot 7 and residence at Fort Morgan were initially the husband's separate property, but have been used throughout the marriage as marital property. Accordingly, Lot 7 and the residence thereon shall immediately be placed on the real estate market for sale. Once sold, the husband shall receive any and all proceeds after any indebtedness, reasonable real estate commission and closing costs are paid.
"15. Based on the evidence provided at trial, the Court finds that the Ronald L. Meehan Revocable Trust is a valid trust and the properties or assets included in the trust shall belong to the trust excepting Lot 7 and residence at Fort Morgan (more specifically set out in Paragraph 1[4] hereinbefore).
"16. The husband's retirement accounts shall be awarded to the husband and the wife shall have no claim or interest therein.
"17. The wife's retirement account shall be awarded to the wife and the husband shall have no claim or interest therein.
"18. The husband shall be 100% responsible for payment of the parties' joint credit card (balance approximately $34,000). The wife shall be held harmless by the husband from any liability thereon.
"19. Each party shall be 100% responsible for payment of any credit cards, or other debts, in their own name (except for mortgage payment on the Daphne Home as set out in detail in Paragraph 1[3] ).
"20. Based on the evidence provided at trial and the disparity in the parties' respective incomes the Court does award the wife alimony to be paid by the husband as follows:
"1. a. The husband shall pay $5000/month for a term of sixty (60) months; and
"b. After the initial sixty (60) month term, the husband shall pay $2500/month until the wife remarries, cohabitates or dies.
"2. The husband shall pay the wife's health insurance for a period of two (2) years after the date of this decree. After said two (2) years, the husband shall no longer be responsible for the wife's insurance.
"3. The husband shall receive his Toyota Rav 4.
"4. The wife shall receive her Toyota Tundra.
"5. The husband shall receive his 1964 Corvette, boat, and woodworking equipment.
"6. All personal belongings have been already satisfactorily divided.
"7. The husband shall be awarded $1000 in attorney's fees to be reimbursed by the wife for her contempt (see October 2015 Order). The wife shall be awarded $5000 in attorney's fees to be reimbursed by the husband. These respective attorney's fees amounts may be set off, one against the other. Each shall be a judgment for which let execution lie...."
On May 7, 2016, the wife filed a motion to alter, amend, or vacate the divorce judgment. The husband's premature motion filed on March 31, 2016, "quickened" on April 7, 2016, the day the judgment was entered.
*1128 Miller v. Miller, 10 So.3d 570, 572 (Ala. Civ. App. 2008). On May 31, 2016, after a hearing, the trial court denied each party's postjudgment motion. On June 2, 2016, the husband filed a timely notice of appeal to this court. On June 14, 2016, the wife filed a timely cross-appeal.
The Husband's Appeal
The husband challenges the trial court's award of alimony in three respects: first, that it exceeds the husband's current monthly income; second, that the trial court wrongfully considered the husband's retirement accounts and trust assets in making the alimony award; and third, that the award does not consider the wife's earning ability and age and the health of the parties or account for the property division.
"The determination of whether the petitioning spouse has a need for periodic alimony, of whether the responding spouse has the ability to pay periodic alimony, and of whether equitable principles require adjustments to periodic alimony are all questions of fact for the trial court, Lawrence v. Lawrence, 455 So.2d 45, 46 (Ala. Civ. App. 1984), with the last issue lying particularly within the discretion of the trial court. See Nolen v. Nolen, 398 So.2d 712, 713-14 (Ala. Civ. App. 1981). On appeal from ore tenus proceedings, this court presumes that the trial court properly found the facts necessary to support its judgment and prudently exercised its discretion. G.G. v. R.S.G., 668 So.2d 828, 830 (Ala. Civ. App. 1995). That presumption may be overcome by a showing from the appellant that substantial evidence does not support those findings of fact, see § 12-21-12(a), Ala. Code 1975, or that the trial court otherwise acted arbitrarily, unjustly, or in contravention of the law. Dees v. Dees, 390 So.2d 1060, 1064 (Ala. Civ. App. 1980)."
Shewbart v. Shewbart, 64 So.3d 1080, 1089 (Ala. Civ. App. 2010).
"A petitioning spouse proves a need for periodic alimony by showing that without such financial support he or she will be unable to maintain the parties' former marital lifestyle." Shewbart, 64 So.3d at 1087. The wife testified to the parties' marital standard of living, and she and the husband both testified that she had reduced her monthly expenses. It was undisputed that the wife terminated her employment to stay home with the child and that the wife had not been employed outside the home for over 10 years. The wife testified that her recent attempts to secure employment had been unsuccessful. The wife testified regarding, and submitted documentary evidence related to, her monthly expenses to support her contention that she needed alimony in order to maintain some semblance of the life that she had enjoyed while married. The evidence supports the trial court's conclusion that the wife demonstrated a need for periodic alimony.
"Once the financial need of the petitioning spouse is established, the trial court should consider the ability of the responding spouse to meet that need." Shewbart, 64 So.3d at 1088 (citing Herboso v. Herboso, 881 So.2d 454, 458 (Ala. Civ. App. 2003) ). The husband asserts in his brief that his monthly income, which includes his pension benefit and Social Security benefits, totals $4,057, and that the alimony award of $5,000 per month exceeds his income. We note that, during the trial, the husband testified that his monthly income was approximately $4,800 and that he could afford to pay the wife alimony for a short period. The husband asserts that the alimony obligation, coupled with his other court-ordered monthly expenses of $574 in child support and $712 in insurance premiums, along with his personal monthly expenses of $1,500, imposes an undue economic hardship on him.
*1129 The husband argues that the trial court wrongfully considered his retirement accounts and trust assets in making the alimony award, and he asserts that the trial court could consider only his current income. We agree, generally, that "[t]he source of periodic-alimony payments must be the current income of the payor spouse." Rose v. Rose, 70 So.3d 429, 433 (Ala. Civ. App. 2011) (citing Smith v. Smith, 866 So.2d 588, 591 (Ala. Civ. App. 2003) ). The current income, however, is not the sole factor for the trial court to consider in determining an award of periodic alimony.
"[W]hen determining the amount of periodic alimony to be awarded, the trial court shall consider the earning capacity of the parties. See, e.g., Ebert v. Ebert, 469 So.2d 615, 618 (Ala. Civ. App. 1985) ('[The] ability to earn, as opposed to actual earnings, is a proper factor to consider in deciding ... an initial award of ... periodic alimony ....'). As with the matter of voluntary underemployment for child-support purposes, the factual question of the earning capacity of a spouse is to be decided by the trial court as an exercise of its judicial discretion. See Lackey v. Lackey, 18 So.3d 393 (Ala. Civ. App. 2009). Hence, we may reverse a judgment based on a finding regarding the earning ability of a spouse for alimony purposes only if the trial court has exceeded its discretion in making that finding. See Warner v. Warner, 693 So.2d 487, 488-89 (Ala. Civ. App. 1997)."
Stone v. Stone, 26 So.3d 1228, 1231 (Ala. Civ. App. 2009). See also Rieger v. Rieger, 147 So.3d 421, 431 (Ala. Civ. App. 2013) ("For purposes of determining a spouse's ability to pay, and for purposes of calculating an appropriate amount of periodic alimony, the trial court should ordinarily use the spouse's net income as the starting point for these evaluations.").
In Smith v. Smith, 866 So.2d 588, 592 (Ala. Civ. App. 2003), this court made clear that a trial court cannot "consider, as a source of income from which to pay periodic alimony, a retirement account from which the account holder is not currently drawing benefits." The evidence here was undisputed that the husband had not yet drawn any funds from his retirement accounts; therefore, the trial court could not consider those accounts in determining its alimony award. Nothing in the judgment indicates, however, that the trial court considered the retirement accounts in fashioning its alimony award. " 'This court cannot assume error, nor can it presume the existence of facts to which the record is silent.' " Leeth v. Jim Walter Homes, Inc., 789 So.2d 243, 247 (Ala. Civ. App. 2000) (quoting Newman v. State, 623 So.2d 1171, 1172 (Ala. Civ. App. 1993) ).
Although the trial court, in these circumstances, could not consider the husband's retirement accounts, the trial court could consider the husband's trust assets in determining whether he had the financial ability to pay alimony.
"The ability to pay [alimony] may be proven by showing that the responding spouse has a sufficient separate estate, following the division of the marital property, see § 30-2-51(a), Ala. Code 1975, and/or sufficient earning capacity to consistently provide the petitioning spouse with the necessary funds to enable him or her to maintain the parties' former marital standard of living. Herboso [v. Herboso, 881 So.2d 454 (Ala. Civ. App. 2003)."
Shewbart, 64 So.3d at 1088.
The evidence indicated that the husband had used at least $50,000 in funds from the long-term-care account held in trust over the course of the year preceding the trial. The husband testified that he had used those funds to pay for taxes, insurance, *1130 and maintenance on lot 7 and lot 8. The trial court found that lot 7 was marital property because the family had lived in the house on lot 7 for at least six years. Therefore, the trial court could have found that the husband regularly used the funds from the long-term-care account and that those funds were a source of income for the purpose of determining the award of periodic alimony. See § 30-2-51(a), Ala. Code 1975.
Furthermore, during the hearing on the postjudgment motions, the court noted its skepticism of the husband's credibility with regard to his financial situation:
"THE COURT: Okay. Look, I am going to go ahead and put a few things out here. As it regards [the husband], yes, I find there's credibility issues. I am not certain that his income is what he says it is. I mean, he has the ability to draw from his trust that he created specifically to protect himself and only himself. He has the ability to draw and that is why I set the alimony where it was."
The trial court, having received ore tenus testimony from the husband, could have concluded that the husband was not forthcoming with his true financial situation and that he had the ability to pay the ordered alimony.
"[T]he trial court was in the best position to observe the witnesses and their demeanor, and to adjudge their credibility. Porter v. Porter, 441 So.2d 921 (Ala. Civ. App. 1983). In determining the weight to be accorded testimony, the trial court, as sole judge of the credibility of witnesses, considers the demeanor and apparent candor or evasiveness of the witnesses, and the trial court may disbelieve and disregard portions of testimony and should accept only that testimony it considers worthy of belief. Reid v. Flournoy, 600 So.2d 1024 (Ala. Civ. App. 1992). See also Brown v. Brown, 586 So.2d 919 (Ala. Civ. App. 1991)."
Bunn v. Bunn, 628 So.2d 695, 697 (Ala. Civ. App. 1993).
After being satisfied that the petitioning spouse has a need for periodic alimony and that the responding spouse has some ability to meet that need, the trial court should consider the equities of the case. Shewbart, 64 So.3d at 1088. Although the length of the marriage in and of itself does not determine the right to an award of alimony, "the longer the parties have maintained certain living and financial arrangements, the more fair it will seem that those arrangements should be maintained beyond the divorce to the extent possible." Shewbart, 64 So.3d at 1088-89 (citing Edwards v. Edwards, 410 So.2d 91, 93 (Ala. Civ. App. 1982) ). The evidence indicated that, although the parties had been married less than 10 years, they had been in a long-term relationship and the husband had been supporting the wife and the child for at least 15 years. The wife testified that the husband had routinely deposited an average of $10,000 per month in an account for the wife until the parties were in the midst of the divorce proceedings. The wife denied the husband's assertions that the parties' mutually intended for her to obtain employment, and the trial court was free to believe the wife's testimony. See Bunn, 628 So.2d at 697. Based on the circumstances, we cannot say that the trial court exceeded its discretion in its alimony award.
Moreover, we note that the husband was awarded a significant portion of the marital estate, and alimony and property awards must be considered together.
"A trial court's determination as to alimony and the division of property following an ore tenus presentation of the evidence is presumed correct. Parrish v. Parrish, 617 So.2d 1036 (Ala. Civ. App. 1993). Moreover, issues of alimony and *1131 property division must be considered together, and the trial court's judgment will not be disturbed absent a finding that it is unsupported by the evidence so as to amount to an abuse of discretion. Id."
Morgan v. Morgan, 686 So.2d 308, 310 (Ala. Civ. App. 1996).
"A division of marital property in a divorce case does not have to be equal, only equitable, and a determination of what is equitable rests within the sound discretion of the trial court." Golden v. Golden, 681 So.2d 605, 608 (Ala. Civ. App. 1996) (citing Pride v. Pride, 631 So.2d 247 (Ala. Civ. App. 1993) ). The husband was awarded lot 7, to be sold, with an equity value of $392,000, and other assorted properties, including his separate property with a value totaling approximately $1.5 million. The wife was awarded the marital home in Daphne, to be sold, with an equity value of approximately $115,000, her retirement account worth approximately $43,000, and alimony of $5,000 per month for 60 months, followed by $2,500 per month. In considering the alimony award and property division together, we cannot say that the trial court exceeded its discretion.
The Wife's Cross-Appeal
The wife argues that "it was error for the trial court to conclude that the Ronald L. Meehan Revocable Trust was a valid trust and, therefore, the Husband's separate property" and that "this is a case of first impression in Alabama." The wife does not argue that the trust is invalid but, instead, argues that the trust should have been considered marital property, rather than separate property. This is not an issue of first impression. Pursuant to § 30-2-51(a), Ala. Code 1975,
"[i]f either spouse has no separate estate or if it is insufficient for the maintenance of a spouse, the judge, upon granting a divorce, at his or her discretion, may order to a spouse an allowance out of the estate of the other spouse, taking into consideration the value thereof and the condition of the spouse's family. Notwithstanding the foregoing, the judge may not take into consideration any property acquired prior to the marriage of the parties or by inheritance or gift unless the judge finds from the evidence that the property, or income produced by the property, has been used regularly for the common benefit of the parties during their marriage."
"The trial judge is granted broad discretion in determining whether property purchased before the parties' marriage or received by gift or inheritance was used 'regularly for the common benefit of the parties during the marriage.' " Nichols v. Nichols, 824 So.2d 797, 802 (Ala. Civ. App. 2001) (citing § 30-2-51, Ala. Code 1975 ).
The evidence indicated that the two assets remaining in the trust after the judgment included lot 8 and the long-term-care account containing approximately $255,000. The husband testified that the funds had been deposited into the long-term-care account before the parties' marriage, and the wife did not present evidence to refute the husband's testimony. The evidence also indicated that the husband had recently used funds from that account for insurance, taxes, and maintenance for lot 7 and lot 8. It was undisputed that the husband purchased lot 7 and lot 8 before the parties' marriage, and the evidence indicated that lot 8 was never used for the common benefit of the parties during the marriage.
Although, as we explained above, the trial court could consider distributions from the trust in determining the husband's ability to pay alimony, the trial court was not required to conclude that the trust was marital property even if the trial court found that trust property had been used for the common benefit of the parties *1132 during the marriage. "[W]hile the trial court may, at its discretion, award one spouse an allowance out of the other spouse's separate property, it is not compelled to do so, even if the property was used for the common benefit of the marriage." Mayhann v. Mayhann, 820 So.2d 836, 839 (Ala. Civ. App. 2001) (citing Ex parte Durbin, 818 So.2d 404, 408 (Ala. 2001) ). Accordingly, based on the deference afforded the trial court's determination, we cannot hold that the trial court exceeded its discretion in determining that the trust, containing lot 8 and the long-term-care account, was the husband's separate property.
The wife also argues that the trial court's child-support award should be reversed and the cause remanded because the record does not contain the requisite child-support-calculation forms. We note, however, that the parties filed a joint stipulation supplementing the record on appeal with the CS-42 child-support form that the trial court used in determining its child-support award. Despite the apparent absence of CS-41 forms, "this court has excused the filing of CS-41 and CS-42 forms in cases in which the evidence in the record clearly established that the child-support award complied with the child-support guidelines." Ruberti v. Ruberti, 117 So.3d 383, 386 (Ala. Civ. App. 2013). The parties discussed the computations for the CS-42 form and calculated their respective child-support obligations at the end of the trial.
The wife also argues that evidence indicated that the husband's monthly income was at least $14,800, rather than $4,800, and that the husband's basic child-support obligation should have been approximately $1,087 per month. The documentary evidence, and the husband's testimony, indicated that the husband's monthly income was approximately $4,800, which is what is reflected on the CS-42 form. The wife did not establish that the husband's income exceeded that amount. The wife further asserts that the husband's income of $4,800 per month on the CS-42 form cannot be reconciled with the alimony award of $5,000 per month. Any discrepancy in those awards, however, can be reconciled. "[T]here is no rigid standard or mathematical formula on which a trial court must base its determination of alimony and the division of marital assets." Yohey v. Yohey, 890 So.2d 160, 164 (Ala. Civ. App. 2004). As explained above, in awarding alimony, the trial court can consider the obligor's estate, ability to pay, and earning capacity in making an alimony award. Stone, 26 So.3d at 1231. In contrast, child-support obligations are governed by Rule 32, Ala. R. Jud. Admin., and application of the child-support guidelines creates a rebuttable presumption that the resulting child-support obligation is correct. Rule 32(A), Ala. R. Jud. Admin. Accordingly, the wife has failed to demonstrate a basis for reversing the trial court's judgment.
The wife's request for an award of attorney's fees on appeal is denied.
APPLICATION GRANTED; NO-OPINION ORDER OF AFFIRMANCE OF MARCH 17, 2017, WITHDRAWN; OPINION SUBSTITUTED; APPEAL-AFFIRMED; CROSS-APPEAL-AFFIRMED.
Thompson, P.J., and Pittman, Thomas, and Moore, JJ., concur.

The husband testified that he receives an additional monthly benefit from the Social Security Administration because he is retired and has a child under the age of 18.